LUCIUS L. WILEY *v.* THE FIRST NATIONAL BANK OF BRATTLEBORO.

*National Banks.*

The taking of special deposits, to keep merely for the accommodation of the depositor, is not within the authorized business of banks organized under the act of Congress for providing a national currency, approved June, 1864; and the cashiers of such banks have no power to bind them on any express contract accompanying, or any implied contract arising out of, such taking.

CASE in three counts, with a count in trover, for certain United States bonds. Plea, the general issue, and trial by jury, April term, 1874, BARRETT, J., presiding.

The plaintiff's evidence tended to show, that in January, 1869, at the defendant's banking house in Brattleboro, he delivered to

S. M. Waite, who then was and ever since has been the cashier of said bank, $2,400 worth of United States 5-20 bonds ; and the plaintiff offered in evidence, and it was admitted under the defendant's objection, a written receipt in the words and figures following, to wit :

"*THE FIRST NATIONAL BANK OF BRATTLEBORO.*
"BRATTLEBORO, VT., Jan. 8, 1869.

"Lucius L. Wiley has deposited in this bank twenty-four [July 1, 1869] [Jan. 1, 1870] hundred dollars of 5-20s, 1867, for safe keeping, as a [July 1, 1870] [Jan. 1, 1871] special deposit.        S. M. WAITE, C."

The words, "The First National Bank of Brattleboro," were a printed heading to the paper on which said receipt was written. The plaintiff's evidence further tended to show, that at the several dates minuted on the margin of said paper, he called at said bank and said Waite paid him the interest on said bonds, and entered said memoranda on the margin of the paper ; that in August, 1871, he presented said receipt to said Waite at said bank, and demanded said bonds of him ; that said Waite replied that he wished he had them, but they were gone, and did not then, nor had he since, delivered said bonds to the plaintiff ; that some time before said demand was made, said Waite informed him that said bonds had been stolen the June before. The plaintiff conceded that the defendant was a national bank, duly organized under the act of Congress of June, 1864, known as the "National Currency Act," and upon the above evidence rested his case. The defendant gave no evidence tending to show that said bonds had in fact been stolen ; nor did the evidence show, save as above stated, any reason for not delivering said bonds when demanded as aforesaid. The defendant offered no evidence, and declined to go to the jury with any question of fact, but asked the court to hold as matter of law that under said act of Congress national banks could not be held liable for special deposits ; that said Waite could only bind himself, and not the bank, by the contract set forth in said receipt. No other question was raised by defendant.

The court, *pro forma*, declined to hold as requested, but directed a verdict for the plaintiff ; to which the defendant excepted.

*Field & Tyler* and *E J. Phelps*, for the defendant.

Upon the facts, it is insisted that the defendant is not liable. The receiving of special deposits for safe keeping, whereby the bank may become liable for negligence of its officers in the custody of such property, is a business which it is not within the corporate power of the bank to engage in. It has no powers whatever, except those conferred upon it by the act under which it is incorporated. *Vt. & Canada R. R. Co.* v. *Vt. Central R. R. Co.* 34 Vt. 47 ; *People* v. *Utica Ins. Co.* 15 Johns. 358, 383. The national banking act neither directly nor by implication, confers upon the bank any authority to receive such deposits. The powers are defined in the 8th section of the act. No other or further powers than those specified in this section, are given by the act in any way. All others are as entirely excluded by implication, as if they were specially denied. *N. Y. Fire Ins. Co.* v. *Ely*, 5 Conn. 572 ; Lord Chancellor MACCLESFIELD in *Child* v. *Hudson's Bay Co.* 2 P. Wms. 207. The power to charge the bank with liability for such deposits, if it exists, must therefore either be found among the specific powers granted by the act, or must be shown to be " such an incidental power as is necessary to carry on the business of banking."

The only specific power that could be claimed to confer this authority, is that of " receiving deposits." But that term plainly applies only to general deposits. Because it is expressly limited to those deposits by which the business of banking is carried on. Special deposits of securities for safe keeping, have nothing whatever to do with the business of banking, any more than deposits of jewels, plate, or works of art. On the contrary, they are more or less a hindrance and obstruction to the business, and could only serve to expose the bank, if allowed to be received, to heavy and dangerous liability, without compensation for either the trouble or the risk. The various national banks in Baltimore, took measures in 1867, to obtain on this subject the opinions of eminent counsel, and also of the U. S. Comptroller of the Currency. They will be found in the Bankers' Magazine for December, 1867, p. 453, and are unanimous, that the receiving of such deposits is not only unauthorized by the banking act, but in direct violation

of it ; that the bank officers cannot make the bank liable for such deposits, and that any bank allowing it may be proceeded against for a forfeiture of its charter. The strictness of construction which the supreme court of the United States has applied to the provisions of this act, is illustrated in the case of *Bullard* v. *Banks*, 18 Wall. 389, where it is held that a by-law giving to a bank a lien on stock of its debtors, is not a " regulation of the business of the bank, or a regulation for the conduct of its officers," within the meaning of the national banking act of 1864, and therefore not such a regulation as under that act national banks have a right to make. Neither the act of the cashier, the acquiescence of directors, nor any usage that has grown up between the officers of the bank and others, where unauthorized by the charter, and outside the power it conveys, can be the foundation of any liability on the part of the bank. The case of *Hood* v. *N. Y. & N. H. R. R. Co.* 22 Conn. 1 and 502, is the same in principle with the present case, while presenting a much stronger equity for the plaintiff. The railroad company contracted with passengers to transport them by a line of stages in connection with their road, advertising for passengers by it, and receiving fare. The plaintiff became a passenger, and by the negligence of the carrier received a personal injury, for which he brought suit. The case was twice before the court and much discussed. It was held that the directors had exceeded the corporate powers of the company, and that the company was not liable in the action, nor estopped from setting up the defence, although it was shown on the part of the plaintiff, that for more than six months before, the company had held itself out to the public as authorized to make such contracts, and had made them in a regular course of business.

In *N. Y. Fire Ins. Co.* v. *Ely*, *supra*, the converse of the proposition of the last case cited, was held by the court. And it was decided that the corporation acquires no right of action against third persons, upon a contract not within the corporate power to make, whatever consideration might have passed for it. In the case of *People* v. *Utica Ins. Co.*, *supra*, which was an information in the nature of a *quo warranto* against the defendants for exer-

cising banking privileges without authority of law, it was held that their charter not containing a grant of power to do business of that character, the transactions were void, and judgment of *ouster* was rendered against the defendant for a violation of their charter.

See also on the subject of the powers of corporations, the opinion of Ch. J. MARSHALL, in *Head* v. *Armory*, 2 Cranch, 167 ; and 1 Angell & Ames Corp. ch. 3, § 6 ; ch. 8, § 12.

*C. N. Davenport*, for the plaintiff.

The receipt offered in evidence, contains a special undertaking, in consideration of the delivery of $2,400 in U. S. bonds to the bank, to safely keep those bonds as a special deposit, and return them to the owner on demand. It is not a naked deposit, binding defendant only to slight care, and making it liable only for gross negligence. This contract requires ordinary care, and imposes liability for ordinary neglect. 2 Kent Com. 564 ; 1 Parsons Cont. 572, note s. ; *Spooner* v. *Mattoon*, 40 Vt. 300 ; Jones Bailm. 48, 49, 50, 51 ; Story Bailm. §§ 70, 71. It is ordinarily true, that plaintiffs are bound to show affirmatively that negligence has intervened. Yet such is not the rule in the case of depositaries, either with or without a special undertaking. A depositary is under a positive obligation to deliver safely the thing committed to his care, except under the special circumstances which afford a lawful excuse. His failure to deliver on demand, puts him, *prima facie*, in the wrong, and casts upon him the burden of showing the circumstances which he claims excuse him. 2 Kent Com. 566 ; Sher. & Redf. Negl. 11 ; Story Bailm. § 213.

It is claimed that national banks have no right to receive special deposits, and, as a corollary, that having received them without right, they may convert them to their own use, and the law affords no remedy. Banks organized under the act to provide a national currency, have " all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, *by receiving deposits*, by buying and selling exchange, coin, and bullion ; by loaning money on personal secu-

rity ; by obtaining, issuing, and circulating notes according to the provisions of this act." Sec. 8 of the act. *National Bank* v. *Lamb*, 10 Am. Rep. 438 ; *National Bank* v. *Commonwealth*, 9 Wall. 353 ; *Van Allen* v. *Assessors*, 3 Wall. 573. " By receiving deposits," is meant special as well as general deposits. A subsequent section clearly shows this is so. " And after such default, &c., it shall not be lawful for the association suffering the same, to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to it, *and to deliver special deposits.*" Sec. 8 ; *Bank* v. *Bank*, 14 Wall. 398 ; *Coffey* v. *Bank*, 2 Am. Rep. 488. Had not the power to receive special deposits been expressly conferred, in the absence of any prohibition, it would be implied from the course of business and the usages of trade. There is nothing illegal in that kind of business. It is as free from hazard, properly conducted, as any other banking business. It is profitable to banks, to be the custodians of their customers' government securities. Morse on Banks, 55. The doctrine of *ultra vires* never excuses corporations or individuals for grand larceny. " I had no business to receive your bonds, therefore I stole them," is an excuse that has never yet been effectual in a court of justice. Corporations are liable for every wrong of which they are guilty ; in such cases the doctrine of *ultra vires* has no application. *Merchants' Bank* v. *State Bank*, 10 Wall. 645 ; *Leach* v. *Hale*, 7 Am. Rep. 112.

Waite, in receiving the bonds and giving the receipt, professed to act as cashier, and in behalf of the bank. His receipt as cashier binds the bank, if within the scope of his authority. Corporations act through their agents. Cashiers of banks are duly authorized agents for the transaction of such business as pertains to their office. Receiving deposits is peculiarly the business of cashiers. Story Agency, § 114 ; *Minor* v. *Mechanics' Bank*, 1 Pet. 70 ; *Merchants' Bank* v. *State Bank*, 10 Wall. 604 ; *Cooke* v. *State Bank*, 11 Am. Rep. 680 ; *Yarborough* v. *Bank of England*, 16 East, 6 ; *Baptist Church* v. *Railroad*, 5 Barb. 80 ; Angell & Ames Corp. §§ 311, 384 ; 2 Hilliard Torts, 285, 286 ; Morse on Banks, 69 *et seq.* A corporation is liable for the acts

of its servants, in the same manner and to the same extent that a natural person would be under like circumstances.

The opinion of the court was delivered by

WHEELER, J.   Although the plaintiff has in this action declared as for a tort, still, so far as the tort rests upon contract, the same rules are to govern that would if the contract itself had been declared upon ; as was said concerning actions of tort founded on the contracts of infants, in. *Towne et al.* v. *Wiley*, 23 Vt. 355, and was held respecting the tort of a married woman resting on her contract, in *Woodward & Perkins* v. *Barnes and wife*, 46 Vt. 332.   The assumption of the obligation that the law imposes upon a depositary to keep the deposit, is, of itself, a contract, as is apparent from the nature of the transaction and from authority. Jones Bailm. 5 ; Story Bailm. § 50.   In this case there is no evidence of any actual conversion of the plaintiff's bonds to the use of the defendant bank.   And in the evidence of some constructive conversion, which the demand and refusal might otherwise afford, what was said in connection with making the refusal, is to be taken as a part of it, and altogether that does not show any refusal in denial of the plaintiff's right, but rather a want of power to deliver, and an excuse for it, which would be very doubtful if not insufficient evidence of a conversion if the demand had been made of the party who had become the depositary.   2 Greenl. Ev. § 644. And would be none whatever of a conversion by the bank, in this case, unless it had itself become the depositary.   The transactions by which the plaintiff claims that the bank had become the depositary, were wholly with the cashier, and their effect to charge the bank rests entirely upon his power in that direction. There is no controversy, and could not properly be any, but that if the taking of these bonds to keep, as they were taken by the cashier, was within the scope of the corporate business of the bank, then the bank did become the depositary of them, subject to the liabilities of that relation, and, if without, not.   A bank is an institution for the custody, loaning, exchange, or issue of money, and for facilitating the transmission of funds by drafts or bills of exchange.   Webster's Dict., Burrill's Law Dict., Bou-

vier's Law Dict., Tit. Banks. In *Foster* v. *Essex Bank*, 17 Mass. 497, the bank was chartered by that name, with power to contract by it, and without other express powers, leaving the scope of its corporate business almost wholly to implication, but according to the special verdict in the case, it had always been its practice to receive special deposits of money and other valuable things, with the knowledge of and without objection by its directors. An important question in the case, which was debated by as able counsel as any in the country, was as to the power of the president and cashier to bind the bank by taking a large amount of gold coin in kegs to keep, on the taking of which a memorandum of its weight and amount was made, to which the president appended a statement signed by him, but not by his official title, that the coin was weighed in his presence, and the cashier a statement signed by him as cashier, that it was left at the bank for safe keeping. After much deliberation it was decided that, on account of that practice, and not because it was a part of legitimate banking business, the bank became charged with the liabilities of a depositary of the coin. That case is much relied upon for the plaintiff in this case, and no other case as to the scope of the powers of banks of sufficient importance to attract the attention of counsel, appears to have arisen and been decided between that and the passage of the act of Congress in 1864, under which this bank was organized. In authorizing the formation of banks under that act, the framers of it must have had in view what the objects of banks were defined to be, and what their powers were understood to be. And with those things in view, after providing how the banks might be organized and officered, make contracts, sue and defend, they enacted that the banks might exercise under that act, " all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt ; by receiving deposits ; by buying and selling exchange, coin, and bullion ; by loaning money on personal security ; by obtaining, issuing, and circulating notes according to the provisions of this act." Deposits in banks had then long been well understood to mean the

70

placing of money in banks to the credit of the depositors, to be used by the banks as their own, and be drawn against by, or paid to, the depositors at their pleasure, and not the delivery of either money, securities, or other property, to be specifically kept and redelivered. These latter had been equally well known as special deposits. Story Bailm. § 88; *Foster* v. *Essex Bank*, 17 Mass. 497. The receiving of such special deposits, is not in any sense necessary to carrying on the business of banking. If made of money, even, no use could be made of it whatever; nor could any profit be derived from it, unless charge should be made for the custody; and then that business would be more like that of a warehouseman than that of a banker. The receiving of such general deposits is a part of ordinary banking business, and power to receive them is necessary to carrying on that part, and useful to carrying on others; and when Congress granted to the banks the incidental powers necessary to carry on the business of banking by receiving deposits, the kind of deposits that the settled meaning of the term used in such connection, would apply to, and the kind that would answer the description as to being neces sary, must have been intended. The express grant of the powers mentioned, is, on familiar principles, an implied exclusion of all not mentioned. It has been urged with plausibility for the plaintiff, that the mention of special deposits in section 46 of the act, shows that such were meant to be included among those that the banks, by section 8, are authorized to receive. But the provisions of section 46 are made solely with reference to winding up the affairs of banks after their business has been stopped, and not at all with reference to the prosecution of it; and this part of the section has especial reference to restricting, and not any to enlarging, their powers. And then banks that would have deposits as security for loans, might have their business stopped; and, if so, under the provision that they should not prosecute business except to receive and keep their money, they might be embarrassed about such special deposits, on payment of the debts, without such a provision as that in section 46 authorizing the delivery of them. But, whatever else may have been the purpose

of inserting that clause there, it seems plain that it was not intended to add to powers that had been so categorically set forth in another separate section as to indicate that all were intended to be named there. This act of Congress, besides authorizing the formation of banks, provided a mode for organizing them by the shareholders signing a certificate stating the name, place, and amount of stock of the bank, the number of shares to each stockholder, and a declaration that the certificate was made to enable them to avail themselves of the advantages of that act. In the absence of any showing, it is presumed from the concession that this is a national bank organized under that act, that it was organized in that mode. And in organizing in that way, the shareholders would have a right to and would understand that they were engaging in no business except that which the act authorized ; and that their officers, chosen by them under the act, would have no authority to enter into any business other than that, to bind them ; and to allow the officers to jeopardize their interests by engaging in other business to the advantage of other persons, would allow the officers to perpetrate a fraud on the shareholders for the benefit of others.

It is insisted for the plaintiff, that the cashier, by taking the bonds and delivering the written certificate that they were deposited in the bank for safe keeping, bound the bank to keep them safely, and that it has thereby become responsible for them. But, although Lord Coke in his report of *Southcote's* case, 4 Rep. 83, and in his commentary on Littleton, 1 Inst. 89 a, b, considered that a bailment to keep merely, and one to keep safely, were of the same obligation, other reports of that case do not seem to warrant his conclusion from it. *Southcote* v. *Bennett*, Cro. Eliz. 815. And it appears to be now well settled, that there is a substantial difference between the two undertakings. *Coggs* v. *Bernard*, 2 Ld. Raym. 911 ; Jones Bailm. 48 ; Story Bailm. § 72. In *Foster* v. *Essex Bank*, it was expressly decided that neither the cashier nor the president of that bank, even when it had followed the practice of taking special deposits, could bind it by an express promise to keep the coin deposited safely, because such a promise would be outside the practice of taking to keep merely.

And clearly on the authority of that case, the cashier in this case could not bind this bank by an express promise to keep the plaintiff's bonds safely. And the undertaking to keep, implied from the mere acceptance of a deposit, is as far outside the authorized business of this bank, as that express undertaking was outside the practice of that one. This case does not show that the cashier placed these bonds in the vault, or with the property of the bank at all; but doubtless the plaintiff expected he would and he did put them into the vault of the bank. But, if he did, he did not do it as the agent of the shareholders of the bank in their corporate capacity, for he had not been made agent for such a purpose. If he had himself become the depositary, and put them there because he considered that to be a safe place for him to keep them in, then the bank is no more liable for them than it would be for bonds of his own if he should put them there for the same reason. If he was the plaintiff's agent in putting them there, they were there at the plaintiff's risk, as much as they would have been if the plaintiff had himself, with leave of the person in charge, placed them there. In neither case would the bank be any more liable than a merchant would be if the plaintiff should get his clerk to lock bonds of the plaintiff in his safe; or than a town would be if he should get the town clerk to lock his bonds into the safe used to keep the town records in. The cashier had no authority to bind the bank by any contract for the custody of the bonds, and the mere fact, if it was the fact, that they got into the vault of the bank, would not charge the bank with their custody. National banks have uses for government bonds, and might in various ways, probably, convert them to their use, and should they do so, they would unquestionably be liable for the tort, as natural or other artificial persons would; but as this case now stands, no such cause of action appears.

*Foster* v. *Essex Bank* is the only one of the cases cited in argument, or that has been observed, that has involved any question enough like the leading one in this case, to afford any direct guide for its decision; and there is this difference between that case and this, that in that case, the charter did not proceed to express what powers the bank should have to make contracts and to do business,

while in this, the act under which this bank is organized, does expressly set forth what powers the bank should have, and does not include power to take special deposits among them. This case would have been like that as to powers of the banks, if the act of Congress, after authorizing the formation of banks with powers to contract, sue, and be sued, had stopped there, without setting forth anything about the business as to which they might contract. As it is, the case has had to be decided more upon the construction of the act of Congress, considered with reference to settled principles that stand about the subject, than upon decided cases. And upon that act, so considered, it is determined here that the taking such special deposits to keep, merely for the accommodation of the depositor, is not within the authorized business of such banks, and that their cashiers have no power to bind them to any liability on any express contract accompanying, or any implied contract arising out of, such taking. And this conclusion cannot work any injustice or hardship to the plaintiff, for he dealt with the cashier because he chose to, not because he was obliged to ; and if the cashier in the dealings assumed to have any power he did not have, the plaintiff trusted him in that respect, and has his responsibility to rely upon to vindicate the assumption. And if the cashier incurred any liability as for himself, the plaintiff likewise trusted him about that, and has the same responsibility of the cashier to look to for it.

Judgment reversed, and cause remanded.