Circuit Court, D. Massachusetts, Sept. 6, 1879.

[See 6 Fed. 215.]

## Case No. 4,802.

FIRST NAT. BANK OF MANHATTAN v. CITIZENS' BANK OF TOPEKA.

[2 Cent. Law J. 757:[1] 21 Int. Rev. Rec. 382; 1 N. Y. Wkly. Dig. 511.]

Circuit Court, D. Kansas. Oct., 1875.

---

[1] [Reprinted from 2 Cent. Law J. 757, by permission.]

G. C. Clemens, for plaintiff.
W. P. Douthitt, for defendant.

FOSTER, District Judge (after stating the facts as above). The question presented by this motion is briefly this: Did Mr. Thomas, the cashier of the defendant bank, act within the scope of his authority as such cashier in this transaction? In other words, did the Citizens' Bank become liable to the Manhattan Bank by reason of the action of said cashier? The defendant bank was organized under an act of the legislature of the state of Kansas. Gen. St. p. 225, § 127. The law gives the power to the bank, among other things, to "carry on the business of receiving money on deposit, and to allow interest thereon, giving to the person depositing credit therefor."

The question resolves itself into two points: 1. Had the bank the power under its charter to receive special deposits? 2. Was this a special deposit?

1. The law is well and definitely settled that a corporation is a creature of the law, and possesses only such powers as the charter of its creation confers upon it, either expressly or incidentally thereto. Trustees of Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 636; Perrine v. Canal Co., 9 How. [50 U. S.] 172. The act of incorporation is to them an enabling act; it gives them all the power they possess. Head v. Insurance Co., 2 Cranch [6 U. S.] 169. The power to receive special deposits is not expressly given by the law; is it incidental to the powers given? Perhaps I need go no further on this question than to say it is extremely doubtful. There is a line of decision starting with the Essex Bank Case, 17 Mass. 497, which holds it to be one of the incidental powers of a bank to receive special deposits. However, by several late and well reasoned cases of the highest courts of different states, this doctrine is

denied or questioned. In Wiley v. First Nat. Bank [47 Vt. 546], it was decided that national banks created under the act of congress have no power to bind themselves by receiving special deposits, and no action can be maintained against the bank for any such deposit left with the cashier and not returned. In First Nat. Bank of Lyons v. Ocean Nat. Bank, the court of appeals of New York very clearly foreshadows its views, and refers to the Vermont decisions approvingly. 60 N. Y. 278. In Weckler v. First Nat. Bank [42 Md. 581], the court of appeals of Maryland held that national banks cannot, under the powers conferred by the act of congress, engage in the business of selling railway bonds on commission. By the act of congress [Act June 3, 1864 (13 Stat. 101)] the powers conferred on national banks are fully as comprehensive as the powers given by the act of the legislature under which that defendant bank is incorporated. The act of congress uses the words "receiving deposits." The act of the legislature uses the words "receiving money on deposit." It would seem that if the former words would not comprehend a special deposit, the latter certainly could not.

2. But was this transaction a special deposit with the defendant bank, within a fair construction of those terms? The object of depositing money, papers, or other valuables in a bank, is safety from loss by theft, fire, or other means. The cashier receives the deposit and undertakes to deliver it on demand to the person making the deposit or his order. There is no risk assumed of delivering it to the wrong person, and no controversy as to who is to receive it. How was it in this case? The purpose of placing this deposit in Mr. Thomas' hands, was not safety alone, but to place it in the possession of a person in whom both parties had confidence and in whose judgment and integrity both parties could rely, judgment sufficient to determine and decide when the contingency should arise which was named in the agreement and to deliver it to the person entitled thereto. The property was beyond the reach of either party, until an uncertain event should occur which was to decide which party was entitled to it, and in determining which party was entitled to the deposit, the cashier was called upon to decide which party was the owner of it—a question about which the parties might and did actually disagree. The cashier occupied very closely the position of a stake-holder, and was compelled to decide who was the winner; and he assumed the liabilities of one occupying that position. It seems to me impossible to hold that in assuming such responsibility he was acting for the bank of which he was cashier, or within the scope of his implied authority, or that by any fair construction of the law the defendant

bank could legally undertake such a transaction. It was ultra vires, and the motion to set aside the verdict must be sustained.