## WHITNEY v. THE FIRST NATIONAL BANK OF BRATTLEBORO.

### National Banks.

National banks are not responsible for the safe keeping of special deposits made according to usage, for the accommodation of depositors and with the knowledge and acquiescence of the bank directors, but without profit to the banks—the receiving of such deposits not being authorized by the National Banking Act under which such banks are organized.

CASE for negligence in keeping certain United States bonds. Plea, the general issue, and trial by jury, April Term, 1876, Windham County, Ross, J., presiding.

The case was first tried at the September Term, 1874, when a verdict was directed, *pro forma*, for the plaintiff, to which the defendant excepted, and the judgment was reversed by this court, and the cause remanded.

The plaintiff testified that at some time in April, 1868, he carried United States seven-thirty treasury notes to the defendant bank, and asked Waite, the cashier, if he could exchange them for five-twenty bonds ; that Waite said he had none on hand, but would send and exchange them ; that he went again to the bank on July 23, 1868, when Waite said he had made the exchange, and put eight five-twenty bonds for $500 each in an envelope, and

handed them to the plaintiff, saying, "You can leave them here if you choose," upon which the plaintiff asked him "if they would be safe," to which Waite replied, "As safe as our property," and that they kept nearly all the bonds in the village and adjoining towns; that nothing was said about the plaintiff's paying for the deposit, and nothing paid, but that Waite then wrote the plaintiff's name on the envelope, put the bonds into the safe or vault, and gave plaintiff a receipt therefor running as follows:

THE FIRST NATIONAL BANK OF BRATTLEBORO,
Brattleboro, Vt., July 23d, 1868.

Received of J. D. Whitney four thousand dollars for safe keeping, as a special deposit. S. A. WAITE, C.

The plaintiff further testified that in January, 1869, he went to the bank for his interest, and Waite asked him if he would take coupons or money, to which he replied that he would take the money; that Waite then said he would cut off the coupons at his leisure, and gave the plaintiff money from the counter, and the plaintiff went away, without seeing either the bonds or the coupons; that he also went for interest in July, 1869, when Waite took out a package of bonds, and asked the plaintiff if he wanted coupons or money, and cut off the coupons and paid him the money, which he took from the counter; that the plaintiff then noticed that the bonds were for $1,000 each, and spoke of it, when Waite said he wanted to use some smaller bonds, and took the liberty to exchange them; that in January and July, 1870, he got interest as usual; that in January, 1871, Waite was not there, and plaintiff saw the book-keeper and told him he had come for his interest; that after some search the book-keeper found the bonds, cut off the coupons, and paid for them in gold and currency; that he never saw the bonds again; that on June 8, 1871, he heard the bank had been robbed, and on the next day went to the bank and inquired for his bonds, and was then informed by Waite that they were gone; that he asked Waite to pay for them, but Waite said he could not, but that he would try to have the directors pay for them; that the bonds were never paid for nor returned.

The plaintiff introduced several witnesses, defendant's assist-

ant cashier among others, whose testimony tended to show that Waite was accustomed, with the approval of the bank officers, to receive government bonds on special deposit, and keep them in the safe, without charge, and to give receipts therefor. To their testimony the defendant objected, but it was received; to which the defendant excepted.

The plaintiff offered to show that on a trial of another suit against the defendant for bonds deposited, Waite testified that there never was a bond left in the bank by anybody without a receipt being given for it; that he enjoined his assistants never to do otherwise; that they did business for their regular customers for the purpose of keeping a set of customers whose business could be made to pay; and that they liked to accommodate such men, and that in answer to a question as to how much they paid their customers for coupons, he answered: "That depends altogether on how gold is; with gold steady at 10½, I have paid 10, because there was a steady market. There have been times when it was 15 that I have paid 12½, because the market was feverish." To this evidence the defendant objected, and it was excluded; to which the plaintiff excepted. The plaintiff thereupon rested, it being conceded that the defendant was a bank duly organized under act of Congress of June, 1864.

The defendant offered no evidence, but claimed, that as it was a bank so organized, it was not liable for special deposits.

The plaintiff requested the court, among other things, to charge that it was competent for a bank organized under said act, with the consent of the bank's directors, to receive from its customers United States bonds as special deposits for safe keeping; that it was within the scope of the power of such banks to receive deposits of such bonds from customers, to be returned in kind; that if Waite as cashier, assuming to act for the defendant, took the bonds and deposited them in the defendant's vault for safe keeping, and the defendant, by its officers and servants, assumed control of them without informing the plaintiff that the bank assumed no responsibility and that the act of Waite was without authority, and that if the plaintiff deposited the bonds and permitted them to remain, believing that defendant could rightfully receive and had

received them as a deposit, and relying upon Waite's agreement to return them,—the defendant could not excuse itself on the ground that Waite had no right to receive them; and that the usage of the defendant and its cashier in that behalf should be regarded as raising the presumption that such usage had the approval of the defendant's directors.

The court refused so to charge, and refused to permit the plaintiff to go to the jury upon any question of fact, but directed a verdict for the defendant; to which the plaintiff excepted.

*Davenport & Eddy*, for the plaintiff.

The defence proceeds upon the ground that as it was not within the scope of the defendant's corporate power to receive United States bonds for safe keeping, bonds so deposited cannot be recovered. But such banks in their unauthorized private dealings with third parties stand on the same footing with natural persons, and are subject to the laws of the States where they do business. *National Bank* v. *Lamb*, 50 N. Y. 95; *National Bank* v. *Commonwealth*, 9 Wall. 353; *Van Allen* v. *Assessors, &c.* 3 Wall. 573. The officers of national banks have the same powers and are under the same liability as the officers of banks under the State banking system. The power to take special deposits was conferred by the act of 1864. See ss. 8, 46; *Bank* v. *Bank*, 14 Wall. 398; *Coffey* v. *National Bank*, 2 Am. Rep. 488. The defendant is bound by the act of its authorized agent. Morse Banking, 139, *et seq.; Sturgis* v. *Bank*, 11 Ohio 153; *Minor* v. *Mechanics' Bank*, 1 Pet. 46; *Baldwin* v. *Bank*, 1 Wall. 234; *United States* v. *City Bank*, 21 How. 356; *Badger* v. *Bank*, 26 Me. 428; *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Cooke* v. *State Bank*, 11 Am. Rep. 680. The deposit, if special to begin with, became a general one. But if the deposit continued to be special, it does not follow that defendant was not liable for it. There is nothing illegal *per se* in a bank's receiving such deposits. Morse on Banks, 55; 2 Hilliard Torts, 285; *Foster* v. *Essex Bank*, 17 Mass. 479; *Marine Bank* v. *Chandler*, 27 Ill. 479; *Coffey* v. *Bank*, 46 Mo. 140; *Bank* v. *Bank*, 14 Wall. 398; *Leach* v. *Hale*, 7 Am. Rep. 112; *Merchants' Bank* v. *State Bank*,

10 Wall. 645; *Schley* v. *National Bank*, Sup. Ct. Ga. 1877; *Van Leaven* v. *National Bank*, 54 N. Y. 671; *Scott* v. *National Bank of Chester*, 72 Penn. 471; *Floyd* v. *Branch Bank*, 15 Penn. 162; *National Bank* v. *Graham*, 29 P. F. Smith, (Penn.) 106; *United Shakers* v. *Underwood*, 9 Bush, (Ky.) 609.

*Wiley* v. *The First National Bank of Brattleboro*, 47 Vt. 546, is not decisive of this case. That case stood upon different facts. The contract shown was with the cashier alone. The point was as to the cashier's power to bind the bank.

If the defendant became the custodian of the plaintiff's bonds, it is bound to return or show good cause. *Ultra vires* is no excuse for wrong or negligence. This defence should not be permitted to corporations that have received the benefit of the contract. See *Chicago Building Society* v. *Crowell*, 65 Ill. 458; *De Graff* v. *Am. Life In. Co.* 21 N. Y. 127; *Parish* v. *Wheeler*, 22 N. Y. 503; *Bissell* v. *Mich. &c. R. R. Co.* 22 N. Y. 258; *Hazelhurst* v. *Railroad Co.* 43 Ga. 54; *Mayor, &c.* v. *Ray*, 19 Wall. 468; *Allegany* v. *McClurken*, 14 Penn. St. 81; *Underwood* v. *Newport Lyceum*, 8 B. Mon. 129; *State Board, &c.* v. *Railway Co.* 47 Ind. 407; *Leavitt* v. *Palmer*, 3 Comst. 19; *Tracy* v. *Talmadge*, 14 N. Y. 162; *Ottawa, &c. Co.* v. *Murray*, 15 Ill. 336.

A corporation is liable for its wrongful acts to the same extent and under the same circumstances as a natural person. *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Railroad Co.* v. *Quigley*, 21 How. 209; *Bank* v. *Johnson*, 24 Me. 490; *Goodspeed* v. *Bank*, 22 Conn. 541; *Bissell* v. *Railroad*, 22 N. Y. 258; *Bank* v. *Bank*, 10 Wall. 604; *Booth* v. *Bank*, 50 N. Y. 376; Brice Ultra Vires, Green's Ed., 240; *Sharp* v. *Mayor, &c.* 40 Barb. 273; Angell &. Ames Corp. s. 300, *et seq.*; *Noyes* v. *Rutland & Burlington R. Co.* 27 Vt. 110; 2 Hilliard Torts, 275.

*Field & Tyler* and *E. J. Phelps*, for the defendant.

The facts in the present case are precisely the same with those presented on the former hearing; and the case must turn now upon the same question then decided, whether a national bank has power to enter into the contract upon which the plaintiff relies. It was then held that such power does not exist, and that

the contract in question was therefore void. The question is therefore distinctly presented, whether the court will rehear a question which it has once fully heard and decided in the same case. It will not. *Stacy* v. *Vermont Central R. Co.* 32 Vt. 551; *Wing* v. *Gleason*, 36 Vt. 378; *Rowan* v. *State Bank*, 45 Vt. 160.

But if the former decision is to be reconsidered, it must be without avail. See *Wiley* v. *The First National Bank of Brattleboro*, 47 Vt. 546, *per* WHEELER, J., and cases cited by the defendant's counsel; *First National Bank* v. *Ocean National Bank*, 60 N. Y. 278; *Weckler* v. *First National Bank*, 42 Md. 581.

The opinion of the court was delivered by

DUNTON, J. This case was before this court at the February Term, 1875, in Windham County, and was there heard with the case of *Wiley* v. *The First National Bank of Brattleboro*, 47 Vt. 546, the same questions being involved in both cases.

Upon the first trial in the County Court, a verdict was directed, *pro forma*, for the plaintiff, and the case came to this court upon the exceptions of the defendant. The *pro-forma* judgment of the County Court was reversed, and the case remanded. It now comes into this court again upon the exceptions of the plaintiff, the court below, at the last trial, having directed a verdict for the defendant.

The case as now presented is substantially the same as before. The only difference between the case as then and now before the court is this; the plaintiff, upon the last trial in the County Court, produced several additional witnesses, whose testimony tended to prove that the cashier of the defendant bank was in the habit of receiving special deposits of United States Government bonds for safe keeping, and keeping them in the vault of the bank for the benefit of the owners or depositors, without charge to them, and that such habit, or usage, was known to the directors, and not objected to by them.

The defendant is a banking corporation, incorporated pursuant to the act of Congress entitled, "An Act to Provide a National Currency," &c., approved June 3, 1864. It was conceded

by the learned counsel for the defendant, that if the bank had the power and authority conferred upon it by the act of Congress to become a party to the alleged contract of bailment as depositary, then by the act of its cashier in receiving and keeping the bonds in question in the manner it was done in this case, the bank became subject to the duties and liabilities of that relation to the plaintiff.

This proposition was not questioned in *Wiley* v. *Bank, supra.* WHEELER, J., who delivered the opinion of the court in that case, says : " There is no controversy, and could not probably be any, but that if the taking of these bonds to keep, as they were taken by the cashier, was within the scope of the corporate business of the bank, then the bank did become the depositary of them, and subject to the liabilities of that relation." But we have no occasion to consider or decide this question. The court held, when this case was before them in 1875, that the acceptance of such a bailment was beyond the scope of the corporate powers of the bank, and hence the defendant was not subject to the liabilities of a depositary of the bonds in question. It therefore follows that the usage of the cashier, with the approval of the directors, could not confer upon the bank this power. The directors are trustees of the shareholders, and their authority is limited by the act of Congress in question, to such powers as are thereby directly conferred upon them, and such, in addition thereto, as are necessarily incidental to the business of banking.

Although this action is in form *ex delicto*, so far as it rests upon contract it is governed by the same rules as though *ex contractu ;* and it was so held in *Wiley* v. *Bank, supra.*

The plaintiff had his choice of remedies between assumpsit and case. He chose the latter ; but the negligence complained of, and for which he is seeking to recover in this suit, is an alleged breach of duty, which, it is claimed, the defendant impliedly agreed to perform by accepting the bailment, so that, if there is any liability on the part of the defendant for such breach of duty, it arises from contract. *Orange Bank* v. *Lamb*, 3 Wend. 158 ; *Legge* v. *Tucker*, 1 H. & N. 509 ; 1 Chit. Pl. (16th Am. ed.) 151 ; 2 Chit. Pl. (same ed.) 67 ; *Gilson* v. *Spear*, 38 Vt.

355 ; *Doran* v. *Smith*, 49 Vt. 353. But the alleged contract of bailment on the part of the defendant was *ultra vires*—it imposed no duty upon the defendant as bailee. And there being no evidence tending to show a conversion of the bonds by the bank, or that the bank received any benefit whatever from the bailment, the same question of law as to the authority of the bank to make the alleged contract by becoming the depositary of the bonds in question without charge, which is the pivotal point in this case as now presented, was decided in this same case when before the court in 1875.

The fact that the cashier used the bonds deposited by the plaintiff, which were of the denomination of five hundred dollars each, and replaced them with bonds of the denomination of one thousand dollars each, was no conversion of the first-named bonds by the bank, there being no evidence that the bank either received any benefit from, or had anything to do with, making the change. *Foster* v. *Essex Bank*, 17 Mass. 479.

The plaintiff also waived all objection to this action of the cashier, by taking the coupons, and treating the substituted bonds as his own, without expressing any disapproval of such action.

It has been repeatedly held by this court, that when a question of law has been once decided in a case, the court will not again consider it in the same case. *Stacy* v. *Vt. Central Railroad Co.* 32 Vt. 551 ; *Wing* v. *Gleason*, 36 Vt. 378 ; *Rowan* v. *State Bank*, 45 Vt. 160.

We might well stop here, and affirm the judgment of the County Court. But a very able and ingenious argument has been made by the learned counsel for the plaintiff, to show that *Wiley* v. *Bank*, *supra*, ought to be overruled ; and numerous cases have been cited which, it is claimed, are in conflict with it ; among which are *Foster* v. *Essex Bank*, 17 Mass. 479 ; *Coffey* v. *Bank*, 46 Mo. 140 ; *Leach* v. *Hale*, 7 Am. Reports, 112, (31 Iowa) ; *Scott* v. *National Bank of Chester*, 72 Penn. 471 ; *National Bank* v. *Graham*, 79 Penn. 106 ; and *Schley* v. *Chattahooche National Bank*, an unreported Georgia case, not furnished us. But owing to the importance of this question to the public, we thought it

behooved us to examine the cases above cited, to which our attention was specially called in the argument for the plaintiff.

The case of *Foster* v. *Essex Bank*, was ably reviewed by WHEELER, J., in *Wiley* v. *Bank*, *supra*, and is not in conflict with that case. The Essex Bank was incorporated by that name, with power to contract; but there was no enumeration of its powers in its charter. It always had been the practice of the bank to receive special deposits of money and other valuable property with the knowledge and approval of the directors, as was found by the special verdict of the jury. The court might, therefore, with propriety, hold as they did, that the corporation and not its officers, became the bailee of the special deposit of coin in question; but a large portion of the same having been fraudulently taken from the bank by the cashier and converted to his own use, the bank being a mere depositary, the court also held that the bank was not liable to the depositor for the value of the coin so taken.

*Coffey* v. *Bank*, was an action brought to recover a special deposit of gold which the bank had converted to its own use. No question was made as to the authority of the bank to become the bailee of special deposits of this kind, and the bank was held liable, as it should have been, for the conversion of the gold to its own use.

In *Leach* v. *Hale*, the cashier advertised that the bank would convert 7-30 United States Government bonds into 5-20 bonds without charge. The plaintiff deposited in the bank 7-30 United States bonds to be converted into 5-20 bonds, and thereafter made a demand for the return of one or the other class of bonds, which was refused. The court held that the bank was not a mere mandatary, or bailee, acting without compensation, but was liable to the depositor for the value of the bonds, on its refusal to deliver them on demand ; and that the business of receiving one class of United States bonds to be converted into another, is within the scope of the powers conferred upon national banks by the act of Congress under which they are organized. The court say : " The transaction, in the light we are now considering it, amounts to the deposit of certain securities, with an undertaking to return

those of a different class, and was within the scope of the general business of the bank." The court omitted to find, whether, in this particular instance, the bank received compensation, although they found that generally for such business it was in some form compensated. We should also infer, although it is not stated, that the bank converted the bonds in question to its own use, which would make it liable in any event. We cannot see why converting one class of United States Government bonds into another class, at the request of the owner, is not one of the "incidental powers" specifically conferred upon national banks by the 8th section of the act of Congress in question, such bonds being "evidences of debt."

In *Scott* v. *National Bank of Chester*, the court held that the bank, which was a mere depositary of United States Government bonds, without special contract or reward, and having exercised the degree of care bestowed on its own goods, was not liable for the larceny of the deposit, even by its own officers. It was assumed by the plaintiff that the bank itself was the bailee, instead of the officer receiving the bonds, and no question was made as to the authority or powers of the bank to become such bailee, by the defendant's counsel, and the case does not show that that question was ever considered by the court.

The only case we have seen in which this exact question was raised in conflict with *Wiley* v. *Bank*, is *National Bank* v. *Graham, supra*. In that case the facts are substantially the same as in the case at bar. The court held that "the mere act of the cashier in receiving the plaintiff's securities would not subject the bank to liability. But if the deposit was known to the directors, and they acquiesced in its retention, a contract relation was created by which the defendants should be held bound." The court cited *Foster* v. *Essex Bank, supra*, as authority for the above proposition, but made no allusion to the difference between the charter of the Essex Bank and the act of Congress under which the defendant corporation was organized, as to the powers thereby respectively conferred upon each corporation. In the act of Congress, the powers of national banks are enumerated. This is not the case with the charter of the Essex Bank; and its powers were

to be determined by implication and usage, and were therefore more or less dependent upon the action of its directors. WOOD-WARD, J., who delivered the opinion of the court in this case, *Bank* v. *Graham*, says : " The rule above stated has been uniformly applied by this court in cases involving the rights and duties of national banks. The principle announced in the recent New York and Vermont cases—*The First National Bank of Lyons* v. *The Ocean National Bank*, and *Wiley* v. *The First National Bank of Brattleboro*—has never been adopted here, so far as it is in conflict with the rule. If the question here had grown out of an act prohibited by law, the principle of these recent authorities would be applicable, as it was applied in *Fowler* v. *Scully*, 72 Penn. 456 ; but the question arises out of an act which has been neither directly nor impliedly forbidden by statute."

This, we think, is begging the question. The 8th section of the act of Congress, under which national banks are organized, makes them banking corporations, with " all such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt ; by receiving deposits ; by buying and selling exchange, coin, and bullion ; by loaning money on personal security ; and by obtaining, issuing, and circulating notes according to the provisions of this act."

The " deposits " here referred to, are deposits of money received by banks in the usual course of business, and have none of the qualities of a bailment. The money deposited becomes the property of the bank, and the relation of debtor and creditor is created between the depositor and the bank.

The powers of national banks being enumerated in the act of Congress by which they are created, the maxim, *expressio unius est exclusio alterius*, if applied in the interpretation of this act, would prohibit national banks from entering into such a contract of bailment as the one in question, as a depositary, unless it is an implied power, necessary to carrying on the business of banking. We do not think it is. On the other hand, it would be hazardous for banks to possess and exercise this power ; and it is no more incidental to them than to an insurance company, or a man-

ufacturing company, or any other corporation, to receive and keep in their vaults special deposits of securities and other property of great value, for safe keeping, without compensation, for the benefit of the depositors, and thereby have resting upon them the liabilities of such depositary or bailee.

As was well said by ALLEN, J., in *First National Bank* v. *Ocean National Bank*, 60 N. Y. 289, "The deposit of these bonds cannot be distinguished from a deposit of jewelry, or plate, or other valuable property, and was a special transaction, not within the ordinary course and business of banking, or necessarily incident to it. If authorized, it added greatly to the risk of loss to the shareholders, without adding to their gains. It was a holding out of greater inducements to burglars and robbers from without, and might prove of greater temptation to dishonesty on the part of clerks and employees within, the bank." And the learned Judge also says, that he fully concurs in the views expressed in the opinion of WHEELER, J., in *Wiley* v. *Bank*, *supra*.

The views expressed by AGNEW, J., in *Fowler* v. *Scully*, *supra*, referred to by the learned Judge who delivered the opinion of the court in *National Bank* v. *Graham*, *supra*, hardly sustain the rule laid down by the latter as the law in Pennsylvania upon this subject. The act of Congress pursuant to which national banks are incorporated, provides in the 8th section, for their loaning money on personal security; and also in a subsequent section, that they can purchase and convey such real estate as shall be mortgaged to them in good faith by way of security for debts *previously* contracted. The validity of a mortgage given to a national bank to secure a loan, was the question before the court in *Fowler* v. *Scully*, *supra*. In the very able opinion of AGNEW, J., in that case, following an enumeration of the powers of national banks contained in the 8th section of the act of Congress in question, we find this language: "In view of the interpretation of such charters given to us by the Federal courts, and the maxim, ' *expressio unius est exclusio alterius*,' the argument might close with the terms of the power to loan money on personal security."

In the very valuable work of Angell & Ames on Corporations, s. 256, we find the following rule for determining what contracts a corporation can make : " In deciding whether a corporation can make a particular contract, we are to consider in the first place whether its charter, or some statute binding upon it, forbids or permits it to make such a contract ; and if the charter and valid statutory law are silent upon the subject, in the second place, whether the power to make such a contract may not be implied on the part of the corporation, as directly or incidentally necessary to enable it to fulfill the purpose of its existence, or whether the contract is entirely foreign to that purpose."

The act of Congress in question being silent upon this subject, is the power to make the alleged contract implied, on the part of the defendant corporation, as directly or incidentally necessary to enable it to fulfill the purpose of its existence ? For the reasons before stated, we think not. In our opinion, the alleged contract of bailment is entirely foreign to that purpose ; and if made by or in behalf of the defendant bank, was *ultra vires*, and imposed no legal obligation or duty upon the corporation as bailee. See *Pearce* v. *Madison & Indianapolis R. R. Co.* 21 How. 441 ; *Vt. & Canada R. R. Co.* v. *Vt. Central R. R. Co.* 34 Vt. 47 ; *Bullard* v. *Banks*, 18 Wall. 389 ; *Head* v. *Armory*, 2 Cranch, 167 ; *Wickler* v. *First National Bank*, 42 Md. 581 ; *First National Bank* v. *Ocean National Bank, supra.*

It was claimed in the argument, that the act contemplates receiving both general and special deposits, from the fact that the 46th section makes it lawful for banks, after they have stopped business, and while winding up their affairs, " to deliver special deposits." But this same point was made in *Wiley* v. *Bank, supra ;* and what was said by WHEELER, J., on this point in his very able opinion in that case, fully answers the argument for the plaintiff upon the same point in this case. The term, special deposits, is generic, and we think, as used in this section, refers only to such class of special deposits as are incidental to the business of banking ; for example : money deposited for a specific purpose, as, to pay a note or bill of exchange, made payable at the bank.

Whitney *v.* First Nat. Bank of Brattleboro.

However much we may dislike to differ with so able a court as the Supreme Court of Pennsylvania, the cases to which we were referred by the learned counsel for the plaintiff, in our opinion furnish no reason why *Wiley* v. *Bank, supra,* should be overruled. On the other hand, that case still has the approval of all the members of this court.

Judgment affirmed.