Upson, J.
In behalf of the plaintiffs in error it is insisted, that whatever contract, or arrangement, existed, was between the defendants in error and W. S. Hiekox individually, and not as an officer of the bank, and that if he did attempt to bind the bank, without the knowledge of the directors, the agreement was ultra vires, and absolutely void. Upon a careftd examination of the testimony, all of which is set forth in the bill of exceptions, we are of opinion that it fully warranted the court of common pleas in finding that the bonds described in the petition were received by the bank as a special deposit for safe keeping; that with the full knowledge, and acquiescence, of its directors and officers, the bank engaged in the business of receiving United States bonds on deposit for safe keeping, and that Hiekox, as cashier, had general authority to receive such special deposits for the bank. We do not think the right of the defendants to recover the value of the bonds depends upon proof that special authority was given to the cashier in this particular instance.
The testimony shows that some of the bonds were actually sold, and the proceeds converted to the use of the bank, and it might well have been regarded as proved, that all of the bonds in this case have been thus converted, but we decide this case upon grounds common to all of the cases submitted with this.
The first question of law presented by the record is, had the cashier power to bind the bank by receiving the bonds as a special deposit for safe keeping. In the case of Wiley v. First National Bank of Brattleboro (47 Vt. 546), the supreme court of Yermont decided that the taking of special deposits to keep, merely for the accommodation of the depositor, is not within the authorized business of national banks, and that their cashiers have no power to bind them on any express contract accompanying, or any implied contract arising out of, such taking. In a nutnber of other cases decided by state courts, it was also held that national banks were not responsible for the safekeeping of special deposits intrusted to their care, even when such deposits were made with the knowledge and acquiescence of the directors, and that the banks could not be held liable even for the gross negligence of their officers. These decisions rest upon the as *108 sumption that the aet under which national banks are organized expressly sets forth the powers confen’ed upon those banks, and does not include among them power to receive special deposits, and that such power is not given them by the grant of all such incidental powers as shall be necessary to carry on the business of banking. The proper construction of the banking act has, however, since this action was brought, been conclusively determined, by the supreme court of the United States, in the case of the First Nat. Bank of Carlisle v. Graham (100 U. S. 699), in which, that court decided, not only that if a bank be accustomed to take such deposits as the one in question, and this is known and acquiesced in, by the directors, it is liable to the same extent as if the deposits had been authorized by the terms of the charter, but also decided that the provision of the law authorizing a bank after its failure, “ to deliver special deposits ” clearly implied that it might, as a part of its legitimate business, receive such special deposits. In the case now under consideration it was proved to have been a part of the ordinary business of the bank to receive United States bonds for safe keeping, and it follows that the cashier in dealing with the defendants in error acted within the scope of his authority as cashier, and that the bank was therefore bound by his acts.
The degree of care required of the bank depends upon the nature of the bailment. There is strong proof that the bonds were taken not merely for the accommodation of the owners, but for the benefit and profit of the bank. It may be conceded, however, for the purpose of this decision, that no advantage or compensation was to be received by the bank for the responsibility which it incurred. It is usually stated that a bailee who is to receive no reward is liable only for gross negligence, and some of the cases hold that such a bailee is responsible only for the want of that care which is taken by the most inattentive. But that rule cannot be applied to all cases of bailment without reward; for when securities are deposited with persons accustomed to receive such deposits, they are liable for any loss occurring through the want of that care which good business men would exercise in regard to property of such value. This was the degree of care required of the bank in *109 this case. Were the bonds lost for the want of such care ? They were demanded by the defendants in error, and the only excuse given for not delivering them, as stated in the answer, was that “ the said bank not having any such bonds in its possession did not deliver any to the plaintiffs.” No explanation was offered and no reason given for the bonds not being in the possession of the bank. We hold that under these circumstances, the proof of demand, and the refusal to deliver, was sufficient evidence that the bonds had been lost by the gross negligence of the bank, if not converted to its own use.

Judgment affirmed.