## NATIONAL BANK *v.* GRAHAM.

1. A national bank is liable for damages occasioned by the loss, through gross negligence, of a special deposit made in it with the knowledge and acquiescence of its officers and directors.

2. Gross negligence on the part of a gratuitous bailee, though not a fraud, is in legal effect the same thing.

3. The doctrine of *ultra vires* has no application in favor of corporations for wrongs committed by them.

4. Sect. 5228 of the Revised Statutes, which provides that it shall be lawful for a national bank after its failure to " deliver special deposits;" is as effectual a recognition of its power to receive them as an express declaration to that effect would have been.

5. The phrase " special deposits," so employed, embraces the public securities of the United States.

ERROR to the Supreme Court of the State of Pennsylvania. The facts are stated in the opinion of the court.

*Mr. George H. Williams* for the plaintiff in error.
*Mr. John Hays, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The capital stock of the First National Bank of Carlisle, Pennsylvania, was $500,000, divided into five hundred shares

of $1,000 each. From Nov. 9, 1869, Samuel Hepburn, the president, owned four hundred and sixty shares. His son, C. H. Hepburn, was the cashier, and he and Hopewell Hepburn, another son and a director, owned ten shares each. From Oct. 19, 1871, H. M. Hepburn, also a son and director, owned ten shares. John G. Orr, the teller and a director, owned the remaining ten shares. With one exception, these persons were directors from the year 1870. In 1867, Fannie L. Graham, the defendant in error, had $4,000 of 7.30 bonds of the United States deposited in the bank for safe-keeping. They were called in by the government, and at her request the cashier had them converted into the same amount of 5.20 bonds. These also were left in the bank for safe-keeping. The cashier gave her a receipt, dated Oct. 22, 1868, setting forth this fact and that the bonds were to be returned on the return of the receipt. The cashier cut off the coupons and collected them and placed the proceeds to her credit on the books of the bank, and paid her the amount as it was demanded. She kept an account with the bank. Before and after the times mentioned, the officers of the bank were accustomed to receive such deposits from others in the same way and for the same purpose. They were entered in a book kept by the bank. The fact of there being such deposits was frequently spoken of by the directors at meetings of the board. Some of the directors and quite a number of other persons had such deposits in the bank. No compensation was expected or received by the institution. It was a bailee without reward. The bank alleged that on the 5th of August, 1871, the bonds of the defendant in error were stolen from its vault. She did not learn the fact until some two or three weeks afterwards. She heard that some other securities belonging to her and so deposited had been stolen, and upon inquiry at the bank was told that those securities had been found upon a neighboring highway and had been returned, but that her government bonds had been stolen also and had not been recovered. She was requested to say nothing about their loss, and was assured that the interest should be regularly paid to her, and that the value of the bonds should also be made good, so that she should not be a loser. The interest was accordingly paid up to the 1st of July, 1873,

inclusive. This suit was brought to recover the value of the bonds.

The defendant in the court below asked the court to instruct the jury that the bank, being a corporation chartered under the national banking laws, " was not authorized to receive bonds and valuables for safe-keeping ; " that " the act of the cashier in taking the bonds of the plaintiff was not within the scope of his powers and duties as cashier, and, therefore, did not bind the bank; and that the plaintiff could not recover." This instruction the court refused to give, and the defendant excepted.

The jury was instructed that, " to justify a recovery against the defendant in this case, they must be satisfied from the evidence that the plaintiff's bonds were received for safe-keeping with the knowledge and acquiescence of the officers and directors of the bank, and that if the bonds were lost by the gross negligence of the bank or its officers, the bank was liable." The defendant again excepted. A verdict was rendered for the plaintiff. The jury thus found and affirmed the facts of knowledge and gross negligence by the bank. These points are, therefore, conclusively established, and are not open to inquiry.

Conceding for the moment that the contract was illegal and void for the reason alleged in behalf of the bank, the consequence insisted upon would by no means follow. There was no moral turpitude on either side, — certainly none on the part of the depositor. She was entitled at any time to reclaim the securities. The bank was bound in good faith and in law to return them, or to keep them, without gross negligence until they were called for. If, when applied for, they were refused, it cannot be doubted that they, or their value, according to the form of action adopted, might have been recovered. *White* v. *The Franklin Bank*, 22 Pick. (Mass.) 181. If the bank had destroyed them or had thrown them into the street, whereby they were lost to the plaintiff, the liability of the bank would have been the same. To have kept them with gross negligence, whereby the same consequence to the plaintiff was incurred, involved necessarily the same result to the depositary. The only way of escape from liability open to the latter

would have been to return the property to the owner, or to get rid of its possession otherwise in some lawful way. Gross negligence on the part of a gratuitous bailee, though not a fraud, is in legal effect the same thing. *Foster* v. *Essex Bank*, 17 Mass. 479. It is a tort, and an action on the case is the appropriate remedy for such a wrong. In many cases where there is a valid contract it may be regarded only as inducement and as raising a duty, for the breach of which an action may be brought *ex contractu* or *ex delicto*, at the option of the injured party. 1 Chitty, Pl. 151.

Corporations are liable for every wrong they commit, and in such cases the doctrine of *ultra vires* has no application.

They are also liable for the acts of their servants while such servants are engaged in the business of their principal, in the same manner and to the same extent that individuals are liable under like circumstances. *Merchants' Bank* v. *State Bank*, 10 Wall. 604. An action may be maintained against a corporation for its malicious or negligent torts, however foreign they may be to the object of its creation or beyond its granted powers. It may be sued for assault and battery, for fraud and deceit, for false imprisonment, for malicious prosecution, for nuisance, and for libel. In certain cases it may be indicted for misfeasance or nonfeasance touching duties imposed upon it in which the public are interested. Its offences may be such as will forfeit its existence. *Philadelphia, Wilmington, & Baltimore Railroad Co.* v. *Quigley*, 21 How. 209; 2 Wait, Actions and Defences, pp. 337–339; Angell & Ames, Corporations, sects. 186, 385; Cooley, Torts, pp. 119, 120.

Recurring to the case in hand, it is now well settled that if a bank be accustomed to take such deposits as the one here in question, and this is known and acquiesced in by the directors, and the property deposited is lost by the gross carelessness of the bailee, a liability ensues in like manner as if the deposit had been authorized by the terms of the charter. *Foster* v. *Essex Bank, supra; Lancaster County National Bank* v. *Smith*, 62 Pa. St. 47; *Scott* v. *The National Bank of Chester Valley*, 72 id. 471; *The First National Bank of Carlisle* v. *Graham*, 79 Pa. 106; *Turner* v. *The First National Bank of Keokuk*, 26 Iowa, 562; *Smith* v. *The First National Bank in Westfield*, 69

Mass. 605 ; *Chattahooche National Bank* v. *Schley*, 58 Ga. 369. The only authorities in direct conflict with these adjudications, to which our attention has been called, are *Willey* v. *The First National Bank of Brattleboro'*, 47 Vt. 546, and *Whitney* v. *The First National Bank of Brattleboro'*, 50 id. 389.

The case first cited (*Foster* v. *Essex Bank*) was argued exhaustively by the most eminent counsel of the time, and decided by a court of great judicial learning and ability. Their opinion is marked by careful elaboration.

The special deposit there was a cask containing gold coin. While it was maintained that the bank would have been liable for its loss by gross negligence, it was held that such negligence in that case had not been shown.

Here, gross negligence is conclusively established. The depositor kept an account in the bank. The cashier cut off and collected the coupons, and placed the proceeds to her credit. The bonds, therefore, entered into the legitimate and proper business of the institution. But it is unnecessary to pursue this view of the subject further, because we think there is another ground free from doubt upon which our judgment may be rested.

The forty-sixth section of the Banking Act of 1864, re-enacted in the Revised Statutes of the United States, sect. 5228, declares that, after the failure of a national bank to pay its circulating notes, &c., " it shall not be lawful for the association suffering the same to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep moneys belonging to it, and to deliver special deposits." This implies clearly that a national bank, as a part of its legitimate business, may receive such " special deposits ; " and this implication is as effectual as an express declaration of the same thing would have been. *United States* v. *Babbit*, 1 Black, 55.

The phrase " special deposits," thus used, embraces deposits such as that here in question. *Patterson* v. *The Syracuse National Bank*, Court of Appeals of New York (recently decided and not yet reported). In that case it was said " a reference to the history of banking discloses that the chief, and in some cases the only, deposits received by the early banks were

special deposits of money, bullion, plate, &c., for safe-keeping, and to be specifically returned to the depositor; and such was the character of the business done by the Bank of Venice (the earliest bank) and the old Bank of Amsterdam, and the same business was done by the Goldsmiths of London and the Bank of England, and we know of none of the earlier banks where it was not done."

It would, undoubtedly, be competent for a national bank to receive a special deposit of such securities as those here in question, either on a contract of hiring or without reward, and it would be liable for a greater or less degree of negligence accordingly.

We do not mean that it could convert itself into a pawn-broker's shop. That subject involves topics alien to the case before us, and which in this opinion it is unnecessary to consider.

*Judgment affirmed.*