## HAZARD *v.* VERMONT & C. R. Co. and others.

*(Circuit Court, D. Vermont.* September 15, 1883.)

1. UNITED STATES COURTS—STATE LAWS AND DECISIONS.

On questions touching rights of property under the laws of a state, those laws, and the decisions of the state courts construing them, are of binding force, and govern in the federal courts.

2. SAME—VERMONT CENTRAL RAILROAD COMPANY—LEASE—MORTGAGE—CONSOLIDATED RAILROAD COMPANY OF VERMONT—ISSUE OF BONDS—COMPROMISE.

The Vermont Central Railroad Company, of which the Vermont & Canada Railroad Company was an extension, leased the whole line of road, and subsequently an agreement was made that, upon default in payment of rent for four months, the Canada Company might enter upon both roads, and take the whole income of them until the rent should be paid up, when the Central Company might resume control. The state court, in construing this lease and agreement, held that the Vermont Central became the owner of the whole line, including the two roads, subject to certain rights and interests in the property of its mortgage bondholders, and the rent claims of the Vermont & Canada road, and that the Vermont & Canada road held and owned the right to a fixed annual rent, as a first charge on the income, arising from the use of said lines of road, and a right to compel the application of such income to the extinguishment of such rents, if in arrear. Subsequently the roads consolidated as the Consolidated Railroad Company of Vermont, which issued $7,000,000 of bonds, secured by mortgage of its roads and property to the American Loan & Trust Company, as trustee for the bondholders, to further secure which a mortgage was executed by the Canada Company, and the bonds delivered to the same trustee; $1,000,000 of which, as a compromise, it was agreed should be accepted by the security holders of the Canada road in place of all claim for rent, past and future. *Held*, that the mortgage executed by the Canada Company was a mortgage of the rent charge only, and that, as it had the right to deal with the rent, it had the right to change the security by the issue of the bonds as proposed; and, as it appeared to be for the benefit of the stockholders that such compromise should be carried out, the delivery of the bonds of the Consolidated Company to the stockholders of the Vermont & Canada Company would not be restrained.

In Equity. Motion for preliminary injunction.

*Wilder L. Burnap* and *Elias Merwin,* for orator.

*Benjamin F. Fifield* and *George F. Edmunds,* for Vermont & Canada and Consolidated Railroad Companies.

*Henry D. Hyde,* for American Loan & Trust Company.

WHEELER, J. This is a motion for a preliminary injunction to restrain the defendant the American Loan & Trust Company from delivering $1,000,000 of bonds of the defendant the Consolidated Railroad Company of Vermont to the stockholders of the defendant the Vermont & Canada Railroad Company, and has been heard on bill and answers. According to the bill the property and franchises of the Vermont Central Railroad Company primarily, and those of the Vermont & Canada Railroad Company ultimately, were subject to $5,357,000 of liabilities, which the property of the Canada Company, after exhausting that of the Central Company, was more than sufficient to pay. The Consolidated Railroad Company of Vermont has succeeded to the property, franchises, and liabilities of the Cen-

tral Company, and issued $7,000,000 of bonds, secured by mortgage of its roads and property to the American Loan & Trust Company as trustee for the bondholders, to further secure which a mortgage of the roads and property of the Canada Company has been executed and the bonds delivered to the same trustee, to be used, $5,357,000 of them to retire the liabilities mentioned, $1,000,000 of them in exchange for the stock of the Canada Company, which amounts to $3,000,000, at one-third its par value, and the balance—$643,000— of them for purposes not disclosed, contrary to the interest and rights of the stockholders of the Canada Company, of whom the orator is one.

The answers set forth that the property and franchises of the Central and Canada Companies are subject to a further liability of $643,- 000 to the Central Vermont Railroad Company; that interest overdue on the $5,357,000 amounted to $2,300,000, making in all $8,300,000, which was more than the value of the property, and subsequently to an annual rent of $240,000 to the Canada Company, of which $2,640,000 was overdue, and that, by way of concession and compromise the security holders had agreed to forego the interest due them, and exchange their securities for these bonds at par, and leave $1,000,000 of the bonds for the Canada stockholders, equal to one-third of the par value of the stock, in place of all claim for rent, past or future; which was agreed to by the Canada Company in its corporate capacity, and stockholders individually, of $2,700,000, out of the $3,000,000 of stock; and that the mortgage of $7,000,000 was as large as the property would bear, and the arrangement advantageous instead of detrimental to the Canada Company and stockholders; and that a surrender of the stock in exchange for the bonds was an essential requirement for carrying out the compromise, and not any substantial part of its consideration. Those parts of the answers that show the consideration of the bonds and mortgages, their adequacy to the value of the property, and the purposes for which the bonds are intended to be delivered to the stockholders of the Canada Company, are directly responsive to those parts of the bill that charge want of consideration in part, an excess of property belonging to the Canada Company, and a fraudulent purpose towards the interests of that company and the minority of the stockholders, and must be taken to be true upon this motion, while those parts in avoidance are not to be so taken.

The question raised on this motion is not affected in any way by the bonds themselves, for they are the bonds of the Consolidated Company only, and the Canada Company is not a party to them; nor by the mortgage of the Consolidated Company, which covers only its own property, but relates only to the validity of the mortgage of the Canada Company as against the rights of its stockholders as security for this $1,000,000 of bonds intended for them. It is claimed to be invalid on the ground, principally, that it is outside of the corporate

power of the Canada Company, as granted to it by its charter and the laws of the state.

The road of the Canada Company was an extension of the line of the Central Company, and the lease of it to the latter was made before it was completed, and was perpetual, without clause of re-entry for non-payment of the rent. At that time there was no statute dispensing with a stipulation for re-entry in ejectment for non-payment of rent, as there is now first enacted with the General Statutes of 1863. Comp. St. p. 286, § 14; Gen. St. p. 339, § 14; Rev. Laws, § 1259. The lease was held operative and the road passed in perpetuity to the Central Company; and while matters so remained, the Canada Company had nothing in respect to the road but the right to recover the rent of the Central Company. Afterwards an agreement was made that, upon default in payment of rent for four months, the Canada Company might enter upon both roads and take the whole income of them until the rent should be paid up, when the Central Company might resume possession. This agreement was held operative to entitle the Canada Company to the income of the roads, but not to their possession, for the payment of its rent, to be reached by receivers of the court. *Vermont & C. R. Co.* v. *Vermont Cent. R. Co.* 34 Vt. 1.

Thus, as said by BARRETT, J., in the same case, before the court on petition of the receivers to sell the roads to pay the accumulated expenses of the receivership, (50 Vt. 500:)

"Virtually and practically under the lease both roads became a single one, in the permanent and perpetual proprietorship of the Vermont Central Railroad Company, and under the permanent possession and control of the Vermont Central Railroad Company, subject to the first right of the Vermont & Canada to the net income, to pay rent four months and more overdue."

—And by REDFIELD, J., in *Langdon* v. *Vermont & C. R. Co.* 54 Vt. 593:

"The Vermont & Canada Railroad and the Vermont Central, each having its corporate entity and franchise, were so bound together by mutual and perpetual covenant that they had become one road. The Vermont Central road was the owner of the whole line including the two roads, subject to certain rights and interests in the property of its mortgage bondholders, and the rent claims of the Vermont & Canada road. The Vermont & Canada Railroad held and owned the right to a fixed annual rent as a first charge on the income arising from the use of said line of roads, and a right to compel the application of such income to the extinguishment of such rents in case they were in arrear. The property of the Vermont Central Railroad was, its roads and incidents, subject to certain fixed burdens. The property of the Vermont & Canada was a leasehold estate, and susceptible of valuation and alienation like other property."

On questions like these, touching rights of property under the laws of the state, those laws, and the decisions of the state courts construing them, are of binding force, and govern in the federal courts. Rev. St. § 721; *Nichols* v. *Levy,* 5 Wall. 433. Under these

decisions of the state courts, which this court is so bound to respect, the Vermont & Canada Company had no railroad to mortgage, or to be affected by its mortgage, either separated from or connected with the road of the Vermont Central, now of the Consolidated Company. The latter company is the proprietor of the whole of this line of railroad property, and the Canada Company, the proprietor of the rent charge upon, or what Judge REDFIELD calls the leasehold estate in, the income of the whole line. The roads and their property are covered wholly by the mortgage of the Consolidated Company; the rent charge only is covered by the mortgage of the Canada Company. The question, therefore, is not whether the Canada Company had corporate power to mortgage its road to raise money to pay rent due to itself for its stockholders, or to pay them for their stock, but whether it has power to deal with this rent by exchanging it for other securities of less amount, but greater value, for its stockholders. The disposition of the rent and the claim for it in future is the principal thing, for that represents substantially the corporate assets of the Canada Company; and when that is gone the transfer or surrender of the stock would be a mere nominal formality. Power to deal with the rent is implied in the power to make the lease and reserve the rent, which it was held the corporation had. *Vermont & C. R. Co.* v. *Vermont Cent. R. Co.* 34 Vt. 1. And powers necessarily implied from those expressly granted are as well granted as the express powers. *Nat. Bank* v. *Graham,* 100 U. S. 699. Power to lease would include power to fix the rent in money or money securities, which might be done from time to time by modifying it in amount, or by changing it from one security to another. This is what is attempted in effect here.

Again, power for this purpose may be found in another direction. When the Canada Company was in danger of losing its charter, by failure to comply with its conditions, the legislature made provisions for its continuance, but provided, also, that the original charter, and all its amendments, should be subject to the control of the general assembly, and might be altered, amended, or repealed as the public good might require, and for the acceptance of this act. Laws Vt. 1859, p. 85, § 3. The company proceeded under the act and became subject to it, as it did to the law authorizing leases of railroads, passed after the charter was granted, under which this lease was held valid. *Vermont & C. R. Co.* v. *Vermont Cent. R. Co.* 34 Vt. 1. This brought the company within the reach of the act of 1882, which provides that "when two railroads are incumbered by a lien or liens upon the two roads, the company owning either road may issue bonds" "for the purpose of extinguishing such lien or liens and compromising disputes," secured by mortgage or mortgages of both roads; "by vote of the stockholders of the companies owning said roads." Laws Vt. 1882, p. 46, § 2. The rent of the Canada Company was a lien upon the income of both roads, which incumbered the roads themselves. It was due to the company as trustee for the stock-

holders. These bonds were to extinguish this lien, and the mortgage to secure them is directly within the terms of the act, if it can operate as a mortgage upon any property at all.

When the rent is extinguished this property represented by the stock will be practically extinguished, as before alluded to, so far as railroad interests will be concerned. Its transfer to the Consolidated Company would not transfer the corporate powers of the Canada Company over any railroad to that company, nor extend or curtail the control of the franchises of either, and is not within the principle that one railroad company cannot extend its franchises and privileges by purchasing the stock of another and controlling it. The stock of the Canada Company represents a moneyed security of the roads; the bonds are to extinguish the securities as such, and not for the purchase of the stock as such. The original lease provided for an absolute grant and release of the road in perpetuity at any time after 20 years, subsequently changed to 50, upon payment of an amount sufficient to pay to such stockholder the par value of his stock. The plan now sought to be carried out is in line with this provisions, and not a new scheme to crush out any rights of a minority of the stockholders. The corporate powers of the company should be exercised with due regard to the just rights of all the stockholders, and not for the purpose of sacrificing the interests of the minority for the advantage of the majority. This plan does not appear to be prosecuted for any such purpose, but presents the aspect of an honest and fair endeavor to save to these stockholders a remnant of their property, as mentioned by Judge REDFIELD to be so desirable in *Langdon* v. *Vermont & C. R. Co.*, before cited. When this scheme for settlement was begun there were, besides the holders of this debt of $5,357,-000, of which $4,357,000 was bonded, and $1,600,000 was floating, and the Central Vermont's receiver's claim of $643,000, and the Canada stock already mentioned, the first-mortgage bondholders to the amount of, originally, $2,000,000, and second-mortgage bondholders to the amount of, originally, $1,500,000 of bonds, on all of which the interest had long remained unpaid, and each class was contending for priority. In the plan some concessions were made by all, and some provision was made for all. That it was at large just and fair is shown by its general acceptance. The considerations for its acceptance by each was its acceptance by the others. When the orator commenced proceedings, the Consolidated Company had been formed by the mortgage bondholders, the Canada rent had been reduced to a nominal sum, the mortgages had been made and delivered, and the bonds had been delivered to the loan and trust company and some of them to the security holders entitled to them, so that the scheme could not be abandoned and the *status* restored. The Vermont & Canada stockholders all stood together in interest, with the advantage over bondholders and single creditors of having

the power of corporate action. Such as has been taken by the orator's associates, does not now appear to be likely to deprive him of any of his legal or equitable rights.

The motion is denied.