## DENVER & R. G. RY. CO. *v.* HARRIS.

January Term, 1884.

1. CORPORATION.—ULTRA VIRES—TRESPASS VI ET ARMIS.
   Where defendant railroad company, by means of a strong body of armed em-
   ployes, took forcible possession of the railroad and property of another company,
   and plaintiff, an employe of the latter company, while on a hand-car in the dis-
   charge of his duty, was fired upon and wounded by defendant's employes, de-
   fendant is liable for the injury, and cannot plead that the trespass was the indi-
   vidual act of its servants, and *ultra vires.*[1]

2. INSTRUCTIONS—MODIFICATION—ERASURE.
   The statute providing that modifications of instructions asked must not be by
   interlineation or erasure is merely directory, and an erasure not prejudicial to the
   party objecting thereto is not ground for reversal of the judgment.

[1] This decision was affirmed by the supreme court of the United States.   See 7 Sup.
Ct. Rep. 1286, and cases there cited.   See, also, Hussey v. King, (N. C.) 3 S. E. Rep.
923; Improvement Co. v. Steinmeier, (Md.) 30 Atl. Rep. 188; Buffalo Lubricating Oil
Co. v. Standard Oil Co., (N. Y.) 12 N. E. Rep. 825.

*William Breeden*, for plaintiff in error.

*C. H. Gildersleeve* and *John H. Knaebel*, for defendant in error.

BRISTOL, J.   This case is here on writ of error to the district court for the First judicial district and county of Santa Fe.   Harris, the plaintiff below, brought an action of trespass against the Denver & Rio Grande Railway Company, a corporation under the laws of the state of Colorado, to recover damages in the sum of $10,000 for bodily injuries inflicted by the agents and employes of the defendant corporation while in and about the employment of their principal, and recovered judgment in the sum of $9,000.   As to the merits of the case the whole controversy turns upon the question whether the injuries were inflicted by the agents or employes of the defendant corportion or other persons acting on their own behalf exclusively, or acting within the scope of their employment by such corporation.   A corporation being an artificial body created by law, all its acts necessarily must be performed by its agents and servants.   And when a corporation is sued in an action founded on the unlawful or tortious acts of the agents or servants, the fact whether the acts complained of were done on their own account exclusively or on behalf of the corporation within the line of their employment is not ordinarily to be established by the plaintiff by proof of what occurred in some meeting of the directors of the corporation,—the evidence of which is under the control of such directors,—but by proof of what the agents and servants of the corporation had done, and of the attending circumstances indicating the purpose of their acts and the object to be attained thereby; and especially if attained, and the corporation accepted the same and used the fruits thereof as its own, proof thereof might be received to establish the corporate liability.

The old common-law doctrine that "A corporation cannot be aiding to a trespass," nor "give a warrant to do a trespass without writing," or that "it could authorize no agent, do no act, and give no assent but by deed," was long since exploded.   The doctrine as now understood and applied by the courts is that corporations are liable for every wrong, every trespass, and every tort committed by their agents and employes within the scope of their employment as such, and to the same extent as individuals under like circumstances; and the doctrine of *ultra vires*, as formerly understood and applied, does not under the modern decisions have any application to such cases. *Merchants' Bank* v. *State Bank*, 10 Wall. 645; *Nat. Bank* v. *Graham*, 100 U. S. 702; *State* v. *Morris & E. R. Co.* 23 N. J. Law, (3 Zab.) 368, 369.

The doctrine of *ultra vires*, as formerly understood and applied by the courts to corporations, was that such institutions were endowed with a species of infallibility; that they in their corporate character could not do or sanction any act by and through their agents or

servants which they were not authorized to do by their respective charters conferring corporate powers; that because they were not authorized to do wrongful and tortious acts they could therefore do no wrong. But it was soon ascertained that these institutions, notwithstanding they had no legal authority to do wrong, yet they often assumed powers *ultra vires* to do and actually did commit all sorts of trespasses and unlawful and wrongful acts through wholly irresponsible servants and employes, often caused the greatest losses and damages to private individuals and their property; and the courts, to protect society, were finally impelled *ex necessitate* to place the responsibility of corporations on a more enlightened and reasonable basis.

The doctrine of *ultra vires*, as now interpreted by the courts, and applied to corporations, signifies merely such acts and doings by any corporation which, though it may have the power to perform or to adopt and sanction through its agents or servants, yet it has no legal authority to do under its charter of corporate powers; in the same sense precisely that every act performed by a natural person which the law either in express terms or by necessary implication does not sanction, nor confer on him any right to do, would be illegal, and might be termed *ultra vires*.

In the well-considered case of *State* v. *Morris & E. R. Co. supra*, in which this whole subject is ably reviewed, and the modern doctrine clearly expressed, the court by its chief justice used the following language: "But it is said that although a corporation may omit to perform acts made obligatory upon it by law, and thus be liable for nonfeasance, yet from its very nature it cannot use force, and therefore cannot commit any act involving force, and which must be charged to have been committed *vi et armis*. This argument rests entirely upon the disability of the corporation to commit any act of trespass or positive wrong, and applies to its capacity to commit civil as well as criminal injuries. It is the very argument by which it was sought to be established that no action for a trespass or tort would lie against a corporation. But it has been well said, that if a corporation has itself no hands with which to strike, it may employ the hands of others; and it is now perfectly well settled, contrary to the ancient authorities, that a corporation is liable *civiliter* for all torts committed by its servants or agents by authority of the corporation, express or implied. * * * The result of the modern cases is that a corporation is liable *civiliter* for torts committed by its servants or agents precisely as a natural person; and that it is liable as a natural person for the acts of its agents done by its authority, express or implied, though there be neither a written appointment under seal, *nor a vote of the corporation constituting the agency or authorizing the act.* * * *

"It is further objected that a corporation aggregate cannot be liable to indictment for a crime because the commission of the criminal act is not warranted by their corporate powers. This argument, pushed to its legitimate conclusion, would exempt a corporation from

all liability for wrongs, civil as well as criminal.   It is most aptly answered by Mr. Binney in his argument in *Chestnut Hill Turnpike Co.* v. *Rutter,* 4 Serg. & R. 16: 'According to the doctrine contended for, if they do an act within the scope of their corporate powers it is legal and they are not answerable for the consequences.'   If the act be not within the range of their corporate powers they had no right by law to do it; it was not one of the objects for which they were incorporated, and therefore it is no act of the corporation at all.   This doctrine leads to absolute impunity for every species of wrong, and can never be sanctioned by any court of justice.   *   *   *   It is said, again, that the individuals who concur in making the order or in doing the work are individually responsible.   And so is every servant or agent by whose agency a tort is committed, but it has never been supposed that the principal is therefore exempt from liability. On the contrary, the principle and the policy of the law has ever been to look to the principal rather than to the mere agent; and in the case of corporations it is the clear dictate of sound law not only, but of public policy, to look rather to the corporation at whose instance and for whose benefit the wrong is perpetrated than to the individual directors by whose order the wrong was done, who may be entirely unknown, or to the laborers by whom the work was performed, who, in a great majority of cases, would be alike unknown and irresponsible."

The authority of the agents and servants of the corporation, and the approval and acceptance of their work and its fruits by their principal, may be proved by the acts and conduct of the corporation in relation thereto, whether the same are manifested by it collectively or through its officers, agents, tenants, etc.   Ang. & A. Corp. (9th Ed.) § 186.

In *Magill* v. *Kauffman,* 4 Serg. & R. 318, the supreme court of Pennsylvania held that evidence of the acts and declarations of the trustees and agents of the corporation, both before and after the incorporation, while transacting business relative to the corporation, as well as evidence of what passed at the meeting of the congregation when assembled on business in relation thereto, were admissible to show the possession of the corporation of land and the extent of its claim of its boundaries.

We cite this authority in answer to the assumption of counsel for plaintiff in error, that the acts and declarations of the agents of the defendant corporation on the trial below ought not to have been received in evidence to establish its liability for the acts of its agents, and to show that it was implicated in taking possession of the railroad in question, and holding the same.

Under the modern, and as it would seem controlling, adjudications on the subject, there can be no doubt as to a legal proposition, that if the defendant corporation (plaintiff in error here) in any manner had formed the purpose of seizing, through its agents and employes,

the Denver & Rio Grande Railway while in the peaceable possession of.
the Atchison, Topeka & Santa Fe Railway Company, and seizing the
same by force, if necessary, and either directed, commanded, or coun-
seled the same, or assented thereto, then it followed as a matter of
law that the acts of its agents or employes, in taking possession in:
pursuance thereof, were the acts of the corporation. And if in taking:
such possession, under such circumstances, its agents or employes.
committed acts of violence amounting to trespasses or torts, for which
an action would lie for damages, the corporation, as well as its agents.
and employes engaged in the same, would be liable to respond in dam-
ages to the injured parties; and as proper circumstantial evidence
tending to prove the connection of the corporation with the acts of
its agents in taking possession, such acts of its agents, as well as their·
declarations in respect thereto, and the object thereof, may be re-
ceived.   And if the corporation accepted and received into its pos-
session and assumed control of the railroad so seized, and commenced,.
and for a time continued, to use and operate the same as its own, it
would be a very strong circumstance indeed tending to establish the-
•fact that its agents and employes, in taking possession, were acting:
within the scope of their employment, and under the direction of their·
principal.

The record discloses the fact that there was evidence on the trial
in the lower court to the effect that about the tenth or twelfth of·
June, 1879, the Atchison, Topeka & Santa Fe Railway Company were·
in peaceable possession, by its agents and employes, of a certain rail-
road in the state of Colorado, running from Alamosa to the city of
Pueblo, in that state; that at or about that date, and while the At-
chison, Topeka & Santa Fe Railway Company were so in possession:
of said railroad, the plaintiff in error, the Denver & Rio Grande Rail-·
way Company, by an armed force of several hundred men, acting as
its agents and employes, and under its vice-president and assistant
general manager, attacked with deadly weapons the agents and em-
ployes of said Atchison, Topeka & Santa Fe Railway Company, hav-·
ing charge of said railroad, and forcibly drove them from the same,
and took forcible possession thereof; that there was a demonstra-
tion of armed men all along the line of the railroad seized, and while
this was being done and the seizure was being made, the defendant.
in error, who was an employe of the Atchison, Topeka & Santa Fe·
Railway Company, on said line of railroad, and while on the track of·
the road, and on a hand car thereon, in the line of his employment,.
was fired upon by men as he was passing, and seriously wounded and.
injured; that immediately upon the seizure of the railroad, as afore-
said, the plaintiff in error accepted it, and at once entered into posses-
sion thereof, and commenced, and for some time continued, to use.
and operate the same as its own.

But, notwithstanding this strong circumstantial evidence, it is con-

v.3N.M.—8

tended on behalf of the plaintiff in error that inasmuch as there is no direct proof that the identical men who did the shooting had any specific orders or directions from the corporate authorities to act in the premises, we ought to assume that no such orders or directions existed, and that these particular men were acting entirely on their own behalf and independently of the corporation. This would be too much like an assumption that skirmishers in battle, because somewhat detached from the main body of troops, did not belong to the army, but were fighting independently on their own account, and without orders from the officer in command. All this might be possible, but the strong presumption would be the other way. The fact that these men committed the violent assault with deadly weapons at the time and place, and in the manner and under the circumstances, detailed in the evidence, gives rise to a very strong presumption that they were a part of the armed force employed to seize the railroad. These facts and circumstances, together with the declarations of the agents and officials of the plaintiff in error, under whom this armed force acted and from whom they received their directions, were competent to go to the jury as evidence tending to establish the corporation's liability.

If the acts of trespass complained of were the acts of the agents, employes, or other persons on their own account, and were in no way authorized or sanctioned by the corporation, it was within the actual knowledge of some of its officers or agents, and could have been easily proved. No attempt of this kind having been made, the strong presumption arises that these armed men, including those who did the shooting, were acting in concert within the line of their employment by the corporation, for the attainment of a specific object on its behalf. The question as to which of these railway companies were legally entitled to the line of railroad in controversy between them does not arise in this case. Even if the Denver & Rio Grande Railway Company had been legally entitled to the possession, it would not have justified the manner of seizure. The excessive violence committed, in either event, would have constituted a trespass for which an action for damages would lie. We hold, therefore, that there was sufficient evidence submitted to the jury, which, if true,—and it was for the jury to determine its credibility,—justified a verdict for the plaintiff.

A long list of specific instructions, founded mainly on the ancient doctrine that a corporation was incapacitated from doing or sanctioning any act of its servants not authorized by its charter of corporate authority, thus exempting it from all liability for the wrongful acts of its employes, though directed by its principal officers and managers, were asked to be given to the jury on behalf of plaintiff in error, and were refused by the court, except two, one of which was given as demanded and the other given with a part erased; to the ruling

of the court on each one of which, except the one given, the defendant below excepted. All the unconditional refusals to charge as demanded were proper, and constituted no error.

The instruction given by the court as demanded by the defendant corporation was as follows: "Agents or managers of the affairs of a railroad corporation such as the defendant cannot be *legally* employed by such company to shoot a person, nor are the officers, agents, or managers of such company, in the usual course of their employment as such officer, agent, or manager, authorized to employ any one to shoot another person." This instruction was given in full as demanded on behalf of the defendant corporation. There was no exception to this instruction on behalf of the plaintiff below, and we quote merely to show that it was more liberal to the defendant corporation than just. While it was true as a legal proposition as far as it went, yet it was well calculated to mislead the jury. Having been given as an independent instruction, the jury might have inferred from its phraseology that if the company could not *legally* authorize its agents to commit the trespass, it would not be liable. The instruction, to be proper, ought to have contained the qualifying words that notwithstanding the company could not *legally* authorize or sanction the wrongful act, yet if, as a matter of fact, it actually did not only authorize, but sanction the same, it would be liable.

The other instruction that was, as aforesaid, partly given and partly refused, is as follows: "Before a railroad company can be held liable for the willful act of any employe or agent in shooting a person, or causing a person to be shot, it must appear from the evidence, to the satisfaction of the jury, that such employe or agent had been employed by the company under authority of its board of directors to do such acts, or that it in some way ratified the said act. Failing in such proofs in this case the jury should find for the defendant."

The latter clause of this instruction was erased evidently by the trial judge, and marked in the margin by him so that it stands upon the record thus: "~~Failing such proof in this case the jury should find for the defendant.~~ Given except as to part lined out."

This instruction was excepted to on behalf of the plaintiff in error on the ground that the entire instruction was not given. But the part that was given was open to the criticism of being liable to improperly mislead the jury, since they might have inferred therefrom that to render the corporation liable for the trespass committed by its agents or employes, it must have been directed or sanctioned at some meeting of the board of directors, which, as we have seen from the authorities, does not follow as a necessary prerequisite to establish such liability, since the same may be implied or inferred from the acts of officials and agents of the corporation, and the attendant circumstances, without any formal meeting of the board of directors to consider the matter. The plaintiff in error cannot be injured or prejudiced by this instruction, as it is more in his favor than

the law would seem to justify.    But the erasure in this instruction is
an irregularity under our statute, which provides as follows: "If the
court refuse a written instruction as demanded, but gives the same
with a modification, which the court may do, such modification shall
not be by *interlineation or erasure*, but shall be well defined, and shall
follow some such characterizing words as ' changed thus,' which words
shall themselves indicate that the same was refused as demanded."
Prince's St. p. 127, § 24.

The erasure in this instruction by the judge was clearly a violation
of the statute.    But as the statute on the subject may properly be
considered as directory merely, and not mandatory, and as the erasure
cannot be considered as prejudicial to the plaintiff in error, it is not
such an irregularity as will justify a reversal.

No substantial error appearing from an examination of the record,
it is ordered that the judgment below be affirmed.