GREELEY v. NASHUA SAVINGS BANK.

A savings-bank is not estopped to claim that it was not authorized by its charter to receive for safe keeping U. S. bonds delivered to a clerk of its treasurer, when neither the bonds nor their avails have come to its possession.

ASSUMPSIT to recover for eight United States interest-bearing treasury notes of $50 each, alleged to have been delivered by the plaintiff to the defendants, April 26, 1862. The plaintiff testified that in the spring of 1862 she called at the Nashua Savings Bank and asked the clerk, French, if he knew of any place where they received such notes for safe keeping. "He told me the bank had arranged for receiving such notes and bonds, and collecting the coupons as they fell due and placing the amount on deposit to the credit of the depositors. Mr. A. P. Hughes, the treasurer of the bank, was present and within hearing, according to my recollection, at this first interview. I afterwards took my treasury notes to the bank, and delivered them to French and took this receipt:

"Nashua, April 26th, 1862. Rec'd of Arabella McG. Greeley 8 $50. 7 3-10 notes for safe keeping and I promise to deliver the same on demand to the owner.

Jos. H. French for A. P. Hughes, Treas.
of Nashua Savings Bank."

It appeared that French was at that time acting as clerk for the treasurer, Hughes. No other evidence was introduced to connect the defendants with the transaction, and there is nothing on the

11*

books of the bank showing that the bank ever received the notes, or any of the proceeds of them.

On motion of the defendants a nonsuit was ordered, and the plaintiff excepted.

Section 2 of the defendants' charter is as follows: " Said corporation shall be capable of receiving from any person or persons disposed to enjoy the advantages of said savings-bank, any deposit or deposits of money, and to use, manage, and improve the same for the benefit and best advantage of the person or persons by and for whom the same shall be deposited respectively; and the net income and profits of all deposits of money received by said corporation shall be paid out and distributed in just proportions among the several persons by and for whom the said deposits shall have been made; and all such deposits may be withdrawn by the persons entitled thereto, at such reasonable times and in such manner as said corporation by its by-laws may direct and appoint, or according to such lawful conditions and limitations as the depositors, agreeably to the regulations of said corporation, may have respectively prescribed and annexed to their deposits."

*H. B. Atherton*, for the plaintiff.

*W. W. Bailey* and *C. W. Hoitt*, for the defendants.

SMITH, J.   The powers of the defendants are defined and limited in and by their charter. *Downing* v. *Mt. Washington Road Co.*, 40 N. H. 230; *Pearson* v. *Railroad*, 62 N. H. —. It empowers them to receive deposits of money, and to use, manage, and improve the same for the benefit of the depositors, and to distribute the profits in just proportions among the depositors, who may withdraw their deposits at such reasonable times and under such reasonable rules as may be prescribed in the by-laws of the corporation. The defendants' officers cannot assume responsibilities or enter into contracts or transactions so as to bind the defendants, unless such acts are clearly incidental to the duties imposed upon them. *Commissioners* v. *Reading Savings Bank*, 133 Mass. 16, 20.

Whatever negotiations the plaintiff may have had with French, the treasurer's clerk, they culminated and were merged in the written contract dated April 26, 1862. There is no evidence that the bonds were left with French with the knowledge or assent of the treasurer, or that he ever had any information that they were left. But whether the contract was made with French with or without the knowledge or assent of the treasurer, it was a contract which neither could make on behalf of the bank, for it was a contract which the defendants were not empowered by their charter to make. It was no part of the business of the bank to receive valuables or securities for safe keeping. Their charter does not authorise them to act as mere depositaries. None of the evidence tends

to show that the bonds came into the possession of the bank, or that the bank ever received any benefit from them, or any of their proceeds. On the contrary, the evidence is that the bank never received the bonds or their avails.

That the bonds were not regarded as money or treated as money, to be placed to the credit of the plaintiff as a depositor, is shown by the fact that they were not, on April 26, 1862, or at any subsequent date, entered on the plaintiff's deposit-book, or upon the books of the bank, to her credit, with the sum of $35 deposited by her on the same day; and the receipt given expressly recites that they were left for safe keeping to be returned to the owner on demand. They were not received as a deposit of money to be used, managed, and improved for the benefit of the depositor. They did not under the contract become the property of the bank: they remained the property of the plaintiff. If they had come into the keeping of the defendants, the defendants would have had no other rights in or to them than those of a mere depositary, and there being no moral turpitude on either side, the plaintiff could at any time have reclaimed her bonds. The defendants would have been bound in good faith to return them, or to keep them without gross negligence until called for; and when called for, if they had been refused, the bonds or their value might have been recovered of the defendants. *National Bank* v. *Graham*, 100 U. S. 699, 701; *Cogswell* v. *Bank*, 59 N. H. 43, 44. But the contract being *ultra vires* of the defendants, they are not liable for the unauthorized act of their treasurer or of his clerk, never having had the possession of the bonds or of their avails. The plaintiff's remedy is against French, or against the estate of Hughes if French acted by his authority.

No satisfactory explanation has been given for the delay of the plaintiff for nineteen years after she parted with the possession of her bonds, and for seventeen years after the death of Hughes, to make any claim upon the defendants. But we do not rest our decision upon the staleness of the plaintiff's claim.

*Exceptions overruled.*

CLARK, J., did not sit: the others concurred.