IN RE INSOLVENCY OF FARMERS & MERCHANTS SAVINGS BANK OF
MOUNT PLEASANT.

ROBERT L. LEACH, Superintendent of Banking, Appellant, v.
SARAH B. CARPER et al., Appellees.

BAILMENT: Elements—Deposit for Safe-keeping. A deposit of bonds
1  with a bank for safe-keeping only, creates a bailment, which the
   receiver of the bank must forthwith redeliver to the bailor upon
   proper identification of the subject-matter of the bailment.

BAILMENT: Unidentified Bailments—Ratable Distribution. When the
2  subject-matter of various bailments with the same bailee is identical
   in kind,—e. g., government bonds,—and becomes so intermingled that
   the owners are unable to identify their separate property, the entire
   series of bailments must, in case of the insolvency of the bailee, be
   ratably distributed among the bailors.

BANKS AND BANKING: Insolvency—Preference—Tracing Conversion.
3  A bailor who asks that his claim against the receiver of an insolvent
   bailee be decreed preferred on the plea that the insolvent wrongfully
   converted the subject-matter of the bailment by hypothecating the
   same for a loan must trace the proceeds of the conversion into the
   hands of the insolvent to the augmentation of the assets coming into
   the hands of the receiver.

BANKS AND BANKING: Insolvency—Preference—Trust Funds. A
4 trustee who deposits trust funds in his individual name is not en-
titled to a preference in the settlement of the affairs of the insolvent
depositary.

BANKS AND BANKING: Insolvency—Preference—Denial of Deposit.
5 The fact that a banker falsely states to an administrator that the
deceased had no deposit in the bank furnishes no basis for decreeing
the administrator a preference in the settlement of the affairs of
the insolvent bank.

Headnote 1: 7 C. J. p. 630. Headnote 2: 6 C. J. p. 1139 (Anno.)
Headnote 3: 7 C. J. pp. 751, 752. Headnote 4: 7 C. J. p. 752 (Anno.)
Headnote 5: 7 C. J. p. 749 (Anno.)

*Appeal from Henry District Court.*—OSCAR HALE, Judge.

DECEMBER 14, 1926.

The court below allowed the claims involved herein as pre-
ferred claims, and the receiver appeals. The facts are fully
recited in the opinion.—*Modified and affirmed.*

*Ben J. Gibson*, Attorney-general, *S. S. Faville*, Assistant
Attorney-general, *F. S. Finley*, and *McCoid & McCoid*, for
appellant.

*J. V. Gray*, for appellees.

STEVENS, J.—I. The Farmers & Merchants Savings Bank of
Mt. Pleasant, Iowa, closed its doors and passed into the hands
of the superintendent of banking, as receiver, on June 6, 1924.
The claimants, 68 in number, each deposited in
the said bank certain Liberty bonds, which de-
posit, as they assert, was for safe-keeping only.
The aggregate amount of bonds thus deposited was $86,550. Of
this amount $27,000 was the property of Albert Cornick, and
$10,000 that of Jason Cornick. The claims of the Cornicks are
not involved in this appeal, but are involved in a separate case
previously submitted to this court. Of the bonds, $55,450 in the
aggregate passed into the hands of the receiver, and $31,100 are
held by the Chase National Bank of New York City, as col-
lateral to a loan by that bank to the insolvent. Of the bonds

1. BAILMENT:
elements: de-
posit for safe-
keeping.

held by the New York City bank, $17,000 are identified as the bonds of Albert and Jason Cornick, leaving $14,100 in unidentified bonds, which are, however, admittedly a part of the bonds deposited by claimants in this case. The claims of W. S. Green and Herman Mabeus are for a preference, and arise out of transactions of a wholly different character. Each depositor of the Liberty bonds was given a paper, partly in print and partly in writing, in the following form:

"Certificate of Deposit of U. S. Bonds;

"Farmers & Merchants Savings Bank—72-238 No. 545.

"Mt. Pleasant, Iowa, October 23, 1922.

"This certifies that James Alexander has deposited in this bank in United States Fourth Liberty Loan Coupon Bonds, returnable to the order of self at this bank, on the return of this certificate properly endorsed.

"Pay $50 and 00 cents ........... Dollars.

"Interest payable thereon at four and one-quarter per cent on April 15th and October 15th. In lieu of interest on and according to the terms of such bonds.

                                    "Ross Walker, Cashier."

So far as the record shows, claimants received interest on their respective bonds, prior to the insolvency of the bank and the appointment of the receiver for the assets thereof. Claimants all testified that they had no intention of parting with the title to their bonds or of negotiating the same to the bank; that their only purpose was to leave them in its custody for safe-keeping. Notwithstanding the somewhat ambiguous character of the alleged certificate or receipt, the bank never treated the bonds as its property, nor were they placed in the bank's assets. A record was made of all the bonds received, but not in the book in which certificates of deposit issued in the ordinary form were entered. The document handed to the depositor designates the deposit as Liberty bonds, and contains the promise to return them upon demand. The interest was to be paid by the bank, in lieu of interest on the bonds. This undertaking by the bank amounted to nothing more than the payment to the owner of the bond of the interest received from the government, as the coupons attached to the bonds became due.

Counsel for the receiver do not seriously contend in argu-.

ment that the transaction was anything more than a bailment. The purpose, as disclosed by the testimony of the claimants, was to place the bonds in the bank for safe-keeping only, and this, we think, is clearly shown, by the manner in which they were handled by the bank, to have been the understanding of its officers. The bank was given no authority to use, hypothecate, or sell the bonds. The very terms upon which they were received, negatives any possible agreement or understanding between the parties that they were to be thus used, or converted into cash. The relationship, therefore, between the bank and each of the several claimants was that of bailment, and not of creditor and debtor. It is well settled that, when a bank receives bonds or other property of a customer for safe-keeping, it becomes a bailee, and liable as such. *Bowen v. First Nat. Bank,* 200 Iowa 40; *Kubli v. First Nat. Bank,* 199 Iowa 194; *Bloomheart v. Foster,* 114 Kan. 786 (221 Pac. 279); *Spry v. Hirning,* 46 S. D. 237 (191 N. W. 833); *State v. Bunton,* (Mo.) 285 S. W. 97; *National Bank v. Graham,* 100 U. S. 699 (25 L. Ed. 750); *Manhattan Bank v. Walker,* 130 U. S. 267 (32 L. Ed. 959).

Authorities need not be cited to the point that it is the duty of the bailee to return to the bailor, upon demand, the specific property which is the subject of the bailment, in accordance with the strict terms of the bailment. The bonds of claimants, therefore, passed into the possession of the receiver subject in all respects to the terms of the bailment under which they were delivered to the bank. Each claimant whose bond or bonds have been specifically identified, is entitled to have the same returned to him by the receiver. The difficulty encountered in the effort of the claimants to identify their specific

2. BAILMENT:
unidentified bailments: ratable
distribution.

property was that neither the claimants nor the bank kept a record of the serial numbers of the bonds, and, as many of them are for the same amount, there is apparently no other method by which the specific bonds may be identified. It is conceded, however, on behalf of the receiver, or clearly shown by the evidence, that all of the bonds in the possession of that officer are a part of the aggregate of bonds deposited by the claimants herein, unless they have been identified as the property of the Cornicks and one other claimant, the Jordan estate, as we understand the record. Accuracy on the part of the court on this point is not

essential, as our conclusion makes necessary a remand of the case for further orders in the district court. It follows that either the bonds in the possession of the receiver must be retained by him, because not specifically identified, and be used for the purpose of paying general creditors, or they must be prorated among the respective claimants. It would be manifestly inequitable and unjust to deprive the claimants thereof, and thereby swell the assets of the bank, which never acquired title thereto, to the advantage of creditors. We have no hesitation in holding that the bonds must be returned to the claimants, to be prorated among them, or sold by the receiver, and the proceeds thus used. This may be left to the election of the claimants, acting together and in harmony. This method of distribution was sanctioned by the Supreme Court of the United States in *Richardson v. Shaw*, 209 U. S. 365 (52 L. Ed. 835).

II. This leaves for disposition only the asserted rights of these claimants to have their claims for the bonds not in the possession of the receiver, but held by the Chase National Bank as collateral to the indebtedness of insolvent thereto, established as preferred claims. The general doctrine by which a preference is allowed in favor of a claimant of funds held by an insolvent bank in trust is familiar, and needs no further elaboration. Whether this doctrine is applicable to the facts of this case, and if so, to what extent, we need not determine. For present purposes, we shall assume that it is. The record is not at all clear as to when the bonds held by the New York bank were first misappropriated by the bank to its own use, nor is it claimed that the bank, as bailee of the funds, is not liable for the conversion thereof. On this point, however, see *Bailey v. Clarinda Tr. & Sav. Bank*, 200 Iowa 1147; *Kubli v. First Nat. Bank*, supra; *American Nat. Bank v. Adams & Co.*, 44 Okla. 129 (143 Pac. 508); *Manhattan Bank v. Walker*, supra; *National Bank v. Graham*, supra; *Leach v. Iowa St. Bank of Atlantic*, 202 Iowa 887.

It appears that the insolvent bank was indebted to the Continental & Commercial National Bank of Chicago in December, 1923, and that the latter was demanding payment. Some of the bonds belonging to appellants were formerly held by the Chicago bank as collateral to the bank's indebtedness. The date

*Margin note: 3. BANKS AND BANKING: insolvency: preference: tracing conversion.*

when the indebtedness to the Chicago bank was incurred, is not disclosed by the record. The bonds now held by the Chase National Bank were turned over to it to secure an indebtedness of $40,000 incurred in January, 1924. The bonds on deposit in the Continental & Commercial National Bank were withdrawn therefrom on January 5th, but it is not clear whether they were returned to the bank at Mt. Pleasant or not. It is possible to infer from the record that they were forwarded to the New York bank, which still has them in its possession. The record discloses nothing whatever as to when the indebtedness to the Chicago bank arose, or what disposition was made of the proceeds of the loan. There is nothing to show that any part thereof went into the bank. Nor does it appear what use was made of the money borrowed of the New York bank. The fair inference from the record is that it was used in the payment of the indebtedness owed by the bank to the Continental & Commercial National Bank. There is nothing, therefore, in the record tending in any way to show that anything received from either bank on the credit of the bonds was ever in the possession of the insolvent, or that the assets of the bank were augmented thereby in the hands of the receiver. Upon no theory, therefore, are claimants entitled to a preference of their claims for the bonds not in the actual possession of the receiver. What is said here is applicable to the claim of the Jordan estate. We conclude, therefore, as to these claims, that the bonds in the possession of the receiver, unless otherwise specifically identified, should be turned over to claimants, to be shared pro rata by them. The respective claims against the receiver are based upon the conversion of the bonds by the officials of the bank, and must be so treated. What is here said is subject to the future release of the bonds, or any of them, held by the bank as in excess of the indebtedness to the New York bank. If any of the bonds are returned, as here indicated, they should be returned to the person or persons entitled thereto.

III. The claims of W. S. Green and Herman Mabeus were allowed as preferred · claims. Green's claim is for a share of the proceeds of a sale of certain personal property of J. T.

4. BANKS AND
BANKING: in-
solvency: pref-
erence: trust
funds.

Green's, his son, and of a manure spreader own-
ed by claimant, and for rent of a farm.  The
money was deposited in the insolvent bank in
pursuance of a written agreement signed by
the creditors of J. T. Green, who was the claimant's tenant,
and who had absconded, and Leta Green, his wife.  A portion of
the proceeds of the sale of the personal property had not been
distributed to the creditors entitled thereto when the bank be-
came insolvent.  We are not called upon to determine the relative
share of each creditor of the bank to whom the money belonged.
It is clear that no ground upon which a claim for preference can
be based is shown.  The relation between claimant and the bank
was simply that of creditor and debtor.

Mabeus was the administrator of the estate of his brother
Walter Louis Mabeus.  The administrator testified that, some-
time after his brother's death and his own appointment as ad-

5. BANKS AND
BANKING: in-
solvency: pref-
erence: denial
of deposit.

ministrator of his estate, he called at the bank
and asked the cashier if his deceased brother
had any funds on deposit in the bank.  He was
answered in the negative.  After the appoint-
ment of the receiver, he learned that his brother did, in fact,
have a savings account in the bank, showing a balance of
$1,116.83.  The asserted right to have the claim preferred is
based upon the above conversation with the cashier of the bank.
The relation between the bank and the deceased brother was
that of creditor and debtor, and the mere denial of the cashier
that the bank was indebted to him did not operate to transform
the relation of the bank and the administrator into that of
trustee and *cestui que trust*.

Other questions discussed by counsel do not require par-
ticular consideration.  In so far as the judgment below ordered
and directed the receiver to deliver the bonds in his possession to
claimants, it is sustained; but, in so far as a preference was
allowed them as to the remaining bonds, the same is set aside
and reversed.  They were entitled to have their claims estab-
lished as general creditors only.  Green and Mabeus have the
status of depositors, and their claim should be so treated by the
receiver.

The case will be remanded to the district court for final
order and judgment in harmony with this opinion, and, if neces-

sary to carry out these directions, the court may take further testimony.—*Modified and affirmed.*

EVANS, FAVILLE, VERMILION, ALBERT, and MORLING, JJ., concur.