## RODGERS v. FIRST NAT. BANK OF PARIS.

No. 4493.

Court of Civil Appeals of Texas. Texarkana.

Jan. 25, 1934.

Rehearing Denied Feb. 1, 1934.

372

Edgar Wright and F. D. Wear, both of Paris, for plaintiff in error.

W. F. Moore and Long & Wortham, all of Paris, for defendant in error.

LEVY, Justice (after stating the case as above).

The points for decision as raised by the demurrers are that of whether or not (1) the alleged action was barred by the statute of limitation of two years, and (2) the alleged transaction was a bailment to the bank as such, imposing a relation of duty or trust in respect to the property, and with legal responsibility for loss resulting from want of care or for neglect of safe-keeping.

As against the demurrer, the facts are to be taken as true as stated in the petition. The material facts appearing are: That during the month of April, 1916, the plaintiff was a general depositor in the bank, and presented and delivered a Stradivarius violin made in 1710, and of great value, to an official, not named, of the defendant bank, which was a regularly chartered national bank, to be kept and stored in the vault of the bank for safe-keeping. That the official, acting for and in behalf of the bank, agreed to take over "and to safely keep the said violin for plaintiff and to deliver (place) the same in its vault where other valuables were stored, and kept by de-positors of said bank, and to deliver same to plaintiff when demanded and called for." That the bank, acting through its officers, with the knowledge and acquiescence of the board of directors, "established" or set up "and controlled" in connection with the banking business "safety deposit boxes and (in) safety vaults wherein its depositors were permitted and invited to store bonds, jewelry, silverware and other valuables belonging to them" without charge or recompense therefor other than that arising from their carrying a general deposit account in the bank. That at a time not stated, but prior to June, 1928, an officer or employee took "the violin from the bank out to his house for his use and pleasure and that while the said violin was in his house and in his possession his house caught fire and a portion thereof destroyed and the violin of the plaintiff was also destroyed by fire."

It is clear from the facts stated that the violin was the absolute property of the plaintiff. The bank had no lien upon it or special property in it. It was not deposited or held as a security for or in connection with any business transaction of the bank as a banking corporation, either present or prospective. It was a simple delivery of particular personal property to be kept for the owner without recompense, and to be returned when the owner should require it. This is the legal definition of a naked bailment. 3 R. C. L. § 187, p. 560; Schauler on Bailments, pp. 55-57; Kegan v. Park Bank, 320 Mo. 623, 8 S.W.(2d) 858, 15 S.W.(2d) 333; Thornton v. Athens Nat. Bank (Tex. Civ. App.) 252 S. W. 278. The mere fact that the plaintiff was a general depositor in the bank would not, as is made clear in the cited cases, determine the character of the bailment to be that of one for hire rather than gratuitous. Therefore, upon determining, as done, the character of the suit, and, further assuming for the moment a liability of the banking corporation as such as a bailee of the property of the plaintiff, the point arising for decision, firstly, is that of whether or not it may be held in the circumstances the suit was barred by limitation. The petition specially showed the fact to be that the plaintiff was informed in the winter of 1923 "by officers and employees of said bank that the violin had been temporarily misplaced and that they would cause a search to be made for it, and would locate it for her." The explanation of the bank officials that the violin was temporarily misplaced and a search would be

made to locate its whereabouts would be a circumstance which would carry notice of its probable loss or of a negligent act of the bank inconsistent with the bailment. The making, though, of the promise, as the bank officials did, to locate the exact whereabouts of the violin, whether in their actual possession or not, and not claiming any adverse interest in the property, may reasonably be deemed circumstances sufficient to justify the plaintiff in treating the bailment as continuing up to the time of the inability of the bank to locate the exact whereabouts of the violin, or the refusal of the bank to make search for the violin. But the further alleged fact that the violin was in fact lost through a negligent act of the bank, and that the plaintiff did not "again make inquiry in regard to her violin" until about five years afterwards, in "June, 1928," may be deemed circumstances conclusively showing reasonable time to have elapsed for the bank officials to locate the whereabouts of the violin and to have the effect to charge the plaintiff with notice of the inability of the bank to deliver the violin upon demand therefor. Imputed notice to plaintiff of the bank's breach of bailment would institute the running of limitation. However, the statute of limitation is entirely distinct from, and is subordinate to, the very serious question back of it, and which must be met, of whether or not the employees of a national bank had the power to receive on behalf of the bank the violin for safe-keeping merely for the accommodation of the plaintiff, and subject the banking corporation as such to the responsibilities and liabilities of a bailee.

■ The transaction by which the plaintiff claims that the bank had become a bailee of her violin was wholly with an employee or officer of the bank, and the effect to charge the bank rests entirely upon his power in that direction. The rule is general and uniform, limiting the responsibility of corporations for the acts of their officers and agents, in the absence of express authority to do the particular act, to those performed in the discharge of their ordinary duties in the usual course of business and within the sphere and scope of such duties. The power to bind the corporation can only be presumed to exist in its officers and agents within the scope of its ordinary business and their ordinary duties or incidental powers of the corporation. 3 Tex. Jur. § 37. p. 422; 2 Clark & Skyles on Agency, § 209, p. 497; 7 C. J. § 646, p. 783. By the National Bank Act the powers of the defendant bank are confined and limited to banking powers only with such incidental powers as shall be necessary to carry on the business of banking. 12 U. S. Code Ann. § 24, p. 13; Logan County Nat. Bank v. Townsend, 139 U. S. 67, 11 S. Ct. 496, 35 L. Ed. 107; California Nat. Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198; Commercial Nat. Bank v. First Nat. Bank, 97 Tex. 536, 80 S. W. 601, 104 Am. St. Rep. 879. And it may be deemed to be settled that the receipt of "special deposits," within the scope and meaning of the term, is within the powers of a national bank. 12 U. S. Code Ann. § 133, p. 252; First Nat. Bank v. Graham, 100 U. S. 699, 25 L. Ed. 750. As defined in Tuckerman v. Mearns, 49 App. D. C. 153, 262 F. 607, 610: "A special deposit implies the custody of property without authority in the custodian to use it, and the right of the owner to receive back the identical thing deposited."

Quoting from 3 R. C. L. 522: "In the case of a special deposit, the bank assumes merely the charge or custody of the property, without authority to use it, and the depositor is entitled to receive back the identical money or thing deposited. In such case the right of property remains in the depositor, and if the deposit is of money, the bank may not mingle it with its own funds. The relation created is that of bailor and bailee, and not that of debtor and creditor."

■ The phrase "special deposits" has been held to embrace bonds of the United States. First Nat. Bank v. Graham, 100 U. S. 699, 25 L. Ed. 750; Whitney v. First Nat. Bank, 154 U. S. 664, and 14 S. Ct. 1215, 26 L. Ed. 212. The handling and receiving for special deposit of United States bonds and public securities may in their very nature come within or partially within the regular line of banking business. It is profitable to banks to be the custodian of their depositors' government securities. The clipping of interest coupons of such bonds and their deposit in the bank as money is at least incident to the banking business. But it is apparent that the phrase cannot be extended to include personal property of any kind in which the bank could have no interest and which in their very nature would not come within the line of banking business. A national bank cannot take "a will" into its custody. Myers v. Exchange Nat. Bank, 96 Wash. 244, 164 .P. 951, L. R. A. 1918A, 67. A "stock of shoes" was received and stored in the back of the bank, and the transaction was held not to be within the scope and meaning of the term "special deposit." American Nat. Bank v. E. W. Adams

& Co., 44 Okl. 129, 143 P. 508, L. R. A. 1915B, 542. That transaction appears, as does the instant one, to be one more in the line of a warehouseman receiving goods for storage. There is a distinguishment between the special deposit of government bonds and other securities, within the ordinary course and business of banking, and the deposit of a violin, not within the ordinary course and business of banking or necessarily incident to it. If there was no bailment of the violin to the bank as such, it neglected no duty and was guilty of no negligence. The whole duty of a bailee rests upon contract, and, if there was no contract, there was no duty. Neither an individual nor a corporation can be called upon to pay that which he or it does not owe, and neither is responsible for want of care or for neglect in protecting property of which he or it has not assumed the custody or any relation of duty or trust in respect to it. If the officer or employee in taking over the violin for safe-keeping assumed to have any power he did not have, the plaintiff trusted him in that respect, and has his responsibility to rely upon to vindicate the assumption. And, if the officer or employee incurred any liability as for himself, the plaintiff likewise trusted him about that, and has the same responsibility of the officer or employee to look to for it. The rule established by the Supreme Court of the United States is that a national bank has the right to plead its own want of power and to assert the nullity of an act which is ultra vires. First Nat. Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007; California Nat. Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198. The national bank to be held on an ultra vires contract must have received benefits therefrom. Logan County Nat. Bank v. Townsend, 139 U. S. 67, 11 S. Ct. 496, 35 L. Ed. 107; Citizens' Central Nat. Bank v. Appleton, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443, and other cases.

The defendant bank may not be held liable in the action on the ground of a general practice or authorization of the practice by the directors of storing a violin. The single transaction of keeping the present violin only appears from the allegations. The general allegation of permitting depositors to store bonds, jewelry, silverware, and other valuables in safety deposit boxes in the bank vault would not present evidence of consent of the bank to be a general bailee and depositor for violins placed openly in the bank vault.

The judgment is affirmed.